839 A.2d 226

**COMMONWEALTH of Pennsylvania, Appellee**

**v.**

**Ralph Trent STOKES, Appellant.**

Supreme Court of Pennsylvania.

Submitted Dec. 23, 2002.

Decided Dec. 30, 2003.

Bernard L. Siegel, Philadelphia, for Ralph Trent Stokes, Appellant.

Hugh J. Burns, Philadelphia, Amy Zapp, Harrisburg, for the Com. of PA, Appellee.

BEFORE: CAPPY, C.J., AND CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN AND LAMB, JJ.

## *OPINION*

JUSTICE EAKIN.

Ralph Trent Stokes appeals from the order denying his petition for relief pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541–9546. We affirm.[1]

Appellant alleges trial court error, and ineffectiveness of trial and appellate counsel. Specifically, appellant asserts PCRA relief was improperly denied where:[2] (1) the trial court's jury instructions violated *Mills v. Maryland*;[3] (2) all prior counsel were ineffective for not obtaining the notes of testimony of *voir dire* to determine whether the prosecutor engaged in racial discrimination during jury selection; (3) trial counsel was ineffective for not properly impeaching Commonwealth witness Donald Jackson; (4) trial counsel was ineffective for not objecting to numerous comments by the prosecutor during the guilt and penalty phase summations; (5) trial counsel was ineffective for not adequately preparing for sentencing; (6) the trial court erred in failing to instruct the jury during the penalty phase that life in prison in Pennsylvania means life without parole; and (7) the death sentence was based on an invalid aggravator.

Appellant's first, third, fifth, and seventh issues have been previously litigated. *See* 42 Pa.C.S. § 9543(a)(3) (to be entitled to post conviction relief, appellant must establish issues were not previously litigated). An issue has been previously litigated if "the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue[.]" *Id.*, § 9544(a)(2). On direct appeal, this Court concluded the verdict slip did not contain

---

1. The facts are not at issue and are found in this Court's Opinion Announcing the Judgment of the Court. *Commonwealth v. Stokes*, 532 Pa. 242, 615 A.2d 704, 707–08 (1992).

2. Appellant's issues have been renumbered for clarity.

3. *Mills v. Maryland*, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988).

language which would mislead the jury. *Stokes*, at 715. Further, the jury instructions complied with the penalty statute and our decision in *Commonwealth v. Frey*, 520 Pa. 338, 554 A.2d 27 (1989) (jury instructions and verdict slip which closely followed language in sentencing statute and did not state or infer requirement that any given mitigating circumstance must be unanimously recognized before it can be weighed against aggravating circumstances in reaching verdict does not violate *Mills*). *Stokes*, at 715. Accordingly, this Court held the verdict slip did not run afoul of *Mills*. *Id.* Appellant's passing mention of counsel's ineffectiveness will not revive this issue. *See Commonwealth v. Bracey*, 568 Pa. 264, 795 A.2d 935, 939 n. 2 (2001) (appellant cannot obtain post conviction review of claims previously litigated on appeal by alleging ineffectiveness of prior counsel and presenting new theories of relief to support previously litigated claims).

Additionally, on direct review, this Court concluded trial counsel was not ineffective for failing to impeach Donald Jackson with his entire criminal history. *Stokes*, at 711. Counsel was prohibited from questioning the witness concerning non *crimen falsi* convictions; thus, he was not ineffective for failing to pursue this line of questioning.

In a related issue, appellant challenged trial counsel's stewardship by claiming he did not adequately prepare for sentencing and did not present certain mitigating evidence. Specifically, appellant contended trial counsel was ineffective for failing to argue mitigating circumstance (e)(1), "the defendant has no significant history of prior criminal convictions." 42 Pa.C.S. § 9711(e)(1). This Court determined this issue meritless in light of appellant's prior juvenile adjudication, noting:

> [J]uvenile adjudications are admissible as "convictions" for consideration by the jury in a death penalty proceeding, under aggravating circumstance (d)(9): "the defendant has a significant history of felony convictions involving the use or threat of violence to the person." Thus, trial counsel's failure to pursue this deceptive offer of a mitigating circumstance was not prejudicial to appellant.

*Stokes,* at 714 (footnote omitted). Appellant's claim trial counsel failed to present a relevant summation was also determined to be meritless on direct appeal. This Court concluded this to be a component of trial strategy, citing *Commonwealth v. Gambrell,* 450 Pa. 290, 301 A.2d 596, 598 (Pa.1973) (decision to give summation, or what type of summation, is matter of trial strategy). *Id.*

On direct appeal, appellant also asserted he was entitled to a new trial because of the circumstances surrounding the jury's finding aggravating circumstance (d)(7) (grave risk of death to others). *See* 42 Pa.C.S. § 9711(d)(7). Although this Court determined the trial court erred in its instruction regarding this aggravating circumstance, this Court concluded the error did not invalidate the sentence because the jury found another aggravating circumstance [4] and no mitigating circumstances. *Stokes,* at 714.

■ Turning to appellant's remaining issues, he asserts he was deprived of his right to a meaningful review because no record of the *voir dire* proceedings exists. Appellant asserts the incomplete record precludes him from developing the claim that the prosecutor engaged in racial discrimination during jury selection. *See* Appellant's Brief, at 21–32.

It is the appellant's responsibility to secure a complete record for review, *see* Pa.R.A.P.1911(a), and appellant asserts counsel was ineffective for failing to ensure there was a complete record. However, Pa.R.A.P.1923 provides:

> If no report of the evidence or proceedings at a hearing or trial was made, or if a transcript is unavailable, the appellant may prepare a statement of the evidence or proceedings from the best available means, including his recollection. The statement shall be served on the appellee, who may serve objections or propose amendments thereto within ten days after service. Thereupon the statement and any objections or proposed amendments shall be submitted to the lower court for settlement and approval and as settled

4. The jury found aggravating circumstance (d)(6), "the defendant committed a killing while in the perpetration of a felony." 42 Pa.C.S. § 9711(d)(6).

and approved shall be included by the clerk of the lower court in the record on appeal.

*Id.* The procedure set forth in Rule 1923 was not followed; because appellant had the opportunity to create a record from his recollection and chose not to do so, he cannot now complain of prejudice. *See Commonwealth v. Hughes,* 480 Pa. 311, 389 A.2d 1081, 1083 n. 1 (1978). Absent prejudice, appellant's ineffectiveness claim fails. *Commonwealth v. Rizzuto,* 566 Pa. 40, 777 A.2d 1069, 1083 (2001).

▮▮▮▮ Appellant asserts he is entitled to relief due to pervasive prosecutorial misconduct during the guilt phase summation. Further, he asserts trial counsel was ineffective for not objecting and appellate counsel was ineffective for failing to raise this claim on appeal.[5] "Comments by a prosecutor do not constitute reversible error unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so they could not weigh the evidence objectively and render a true verdict." *Commonwealth v. Fisher,* 572 Pa. 105, 813 A.2d 761, 768 (2002) (OAJC). Further, when considering appellant's claims of prosecutorial misconduct, it must be noted a prosecutor's comments do not constitute evidence. *Commonwealth v. Baez,* 554 Pa. 66, 720 A.2d 711, 729 (1998). Here, the trial court instructed the jury of this fact several times. N.T., 7/7/83, at 1.21–22, 1.32; 7/21/83, at 12.4–6; 7/22/83, at 13.27–29. A jury is presumed to follow the court's instructions. *Baez,* at 722.

5. To preserve an ineffectiveness claim for review, appellant must properly plead the issue as a layered ineffectiveness claims. Additionally, appellant must present, *i.e.,* develop, each prong of the *Pierce* test, regarding appellate counsel's allegedly deficient representation for failing to raise prior counsel's ineffectiveness. *Commonwealth v. Rush,* 576 Pa. at 3, 838 A.2d 651 (2003), 2003 WL 22970873; *Commonwealth v. McGill,* 832 A.2d 1014, 1023 (Pa.2003). Although appellant's PCRA petition was dismissed without a hearing, the PCRA court provided notice to appellant regarding the reasons for dismissal. Further, remand for a hearing pursuant to *Commonwealth v. Williams,* 566 Pa. 553, 782 A.2d 517 (2001), is not necessary as appellant has challenged specific statements, which we are able to address by reviewing the trial record. *See Rush,* at 16 n. 10, 838 A.2d at 659 n. 10, 2003 WL 22970873.

Appellant asserts trial counsel was ineffective for failing to object and request a curative instruction regarding the following remarks during closing at the guilt phase:

And, I will mention some biblical quotes, and it's really an unfair advantage to even go into the mentioning of biblical quotes. It is written: "inasmuch [sic] as you do this to the least of my brothers, you do it to me." Now, who are the least of these three? Could it have been Mrs. Figueroa . . .

Or, is it Eugene Jefferson, the dishwasher . . .

Or, it is Peter Santangelo . . .

Did Peter Santangelo die just because he was there, just because he was there? Who are the least of these?

\* \* \*

You will have to look at the testimony of the convicted thief and convicted robber, an admitted participant in this case, and you will have to ask yourselves this question; Do I dare believe him?

\* \* \*

Let's go back to that time on Calvary and remember what was on the right and what was on the left. There you had a thief on the right of him and a thief on the left of him.

\* \* \*

But, does it amount to a reasonable doubt? And, that's a doubt based on reason, a doubt coming of the evidence. I would submit to you, ladies and gentlemen, that there is no doubt. And, those among you, maybe going again on a biblical phrase, "Except that I see the prints of the nails and thrust my hand in the wound inside, I will not believe." Do we have to pass these among you? Do you have to smell [sic] the gunpowder within the freezer? Do you have to experience the fear of Renard Mills, or do you have to stand up and do what you know is right?

\* \* \*

Let him walk out of here, because if you could find as rational members of this community that what you see exhibited before you was not an intentional, willful, premedi-

tated, planned killing of three people, maybe we go back and let me declare or you be declared Thomases, doubting Thomases all, for we have done everything we could do, and we being the police.

\* \* \*

For those who are inclined for biblical quotes, we will talk about Old Testament, Daniel, "Ralph Trent Stokes, thou weighed in the balance, and you are found wanting, wanting for what you did."

N.T., 7/21/83, at 12.66–67, 12.76–77, 12.77–78, 12.80, 12.83–84 (internal footnotes omitted).

Prior to 1991, these types of biblical references were considered to be pushing the limits of oratorical flair, but did not cross the line into prosecutorial misconduct. *See, e.g., Commonwealth v. Henry*, 524 Pa. 135, 569 A.2d 929 (1990) (not reversible error where prosecutor made comments equating appellant to Prince of Darkness); *Commonwealth v. Whitney*, 511 Pa. 232, 512 A.2d 1152, 1159 (1986) (not reversible error when prosecutor repeatedly asked jury as to how they would be able to turn other cheek with such cold blooded killer and further mentioned that Bible speaks of the "Prince of Darkness, the personification of evil.")

In *Commonwealth v. Chambers*, 528 Pa. 558, 599 A.2d 630, 644 (1991), this Court adopted a *per se* rule that biblical references by the prosecutor were automatically reversible error. *Id.; but see Commonwealth v. Spotz*, 562 Pa. 498, 756 A.2d 1139 (2000) (not all phrases traced to the Bible are improper). However, *Chambers* does not apply retroactively. *Commonwealth v. Cook*, 544 Pa. 361, 676 A.2d 639, 651 (1996). In *Cook*, this Court rejected a similar ineffectiveness claim holding the law at the time permitted biblical references; therefore, counsel was not ineffective for failing to anticipate this Court's decision in *Chambers*. Accordingly, because appellant was tried before 1991, trial counsel was not *per se* ineffective for failing to anticipate the *Chambers* decision. *Cook*, at 651. At the time, these statements were proper, and trial counsel was not ineffective for failing to object. Accord-

ingly, appellant's claim appellate counsel was ineffective is defeated. *See McGill*, at 1023.

 Next, appellant asserts the prosecutor committed misconduct in his penalty phase summation, and all prior counsel were ineffective for failing to challenge these comments. Initially, appellant claims the prosecutor argued for a death sentence based on irrelevant factors, and improperly denigrated mitigation evidence and urged the jury to ignore it. During the sentencing phase of a capital case, a prosecutor must be afforded reasonable latitude in arguing his position to the jury and he may employ oratorical flair in arguing in favor of the death penalty. *Commonwealth v. Basemore*, 525 Pa. 512, 582 A.2d 861, 869 (1990). Moreover, the prosecutor is entitled to fairly respond to evidence presented by the defendant or to closing remarks made by defendant's counsel. *Commonwealth v. Hall*, 523 Pa. 75, 565 A.2d 144 (1989).

In his summation, defense counsel argued:

[Defense counsel]: if you order him to die, the error that the defendant asserts that you made in your verdict can never be corrected. He has told you he hasn't done it. The Bible says in the Commandments, "thou shalt not kill."

It doesn't say, "Thou shalt not kill someone, but if the law let's you, it's ok." It says, "Thou shalt not kill."

And, each one of the twelve of you are the killers if this boy is put to death on this sentence. Each of you on the Great Day will have to answer for why you participated in killing this boy.[6]

You are the ones who have to stand up and put it in the book for this justified killing of this defendant if that is your verdict.

If one of you believes that, "Thou shalt not kill," you can only obey that belief by insisting that the person not be killed, even though that killing is supposed to be justified under the law.

6. The trial court sustained the prosecution's objection to this comment. However, defense counsel continued.

I don't know what more to say to you. As I said, you did not listen to me the last time.

N.T., 7/25/83, at 14.54.

The prosecutor responded, in his summation:

[M]aybe [trial counsel] subscribes to that theory which was prevalent in the '60's. "It's always somebody else's fault. Johnny can't read, but it's your fault".... The streets are the way they are because somebody else was deprived.... Get out of that apologetic state of mind. You owe no pardons to anyone.

[Trial counsel] talks about "this boy." I submit to you when I was a child, I spoke as a child. I acted as a child.

But, when I became a man, I gave up childish things. I ask you: looking at Peter Santangelo, Mary Louise Figueroa, and Eugene Jefferson, is this a boy? Is this a boy?

How many more chances, how many more Mary Louise Figueroas and Peter Santangelos and Eugene Jeffersons must there be?

Ralph Trent Stokes. What did you expect him to say? ... or how did you expect him to react?

Sooner or later everyone sits down to a banquet of consequences. And, I would submit to you that seven days a week, thirty days a month, 365 days a year, for what you found this man did, how he did it, and why he did it, he does not deserve a chance.

He does not deserve to be called a man. A man? For who could have cold-bloodedly eliminated and annihilated, executed, three people?

Doesn't it remind you of the old Abraham Lincoln quote you have about the orphan who after having killed his mother and his father cried because he was an orphan.

Blessed are the merciful for they shall receive mercy. Was he merciful? How cold-blooded was he? How? How insensitive was he?

This won't stop, ladies and gentlemen, and it won't stop until you say, "Stop!" For years, even the Great Society, the Great Society is dead. Safety on your streets is your intent.

N.T., 7/25/83, at 14.57.

Appellant asserts these comments improperly directed the jury to sentence him to death because of a discredited theory that allowed people to evade responsibility. Further, appellant asserts the prosecutor urged the jury to ignore mitigating evidence and impose the death penalty to restore order to society. Appellant's Brief, at 41. Taken as a whole, the comments were proper. The prosecution argued appellant's age was not an excuse and the death sentence was not the jury's fault, as defense counsel had asserted in his summation. A prosecutor may urge the jury to disfavor the defense's mitigation evidence in favor of imposing the death penalty. "There is nothing improper in the prosecutor arguing the appropriateness of the death penalty because that is the only issue before the jury at the penalty phase of the trial." *Commonwealth v. Dennis*, 552 Pa. 331, 715 A.2d 404, 415 (1998) (quoting *Chambers*, at 641). It is also not improper for the prosecution to ask the jury to reject defendant's age as a mitigating factor. *Id.* Taken in totality, the prosecutor's comments amount to permissible "oratorical flair" in arguing for the death penalty. *Basemore, supra; Commonwealth v. Travaglia*, 541 Pa. 108, 661 A.2d 352 (1995) (it was not improper for prosecutor to argue that imposition of death penalty would be only way to protect society from appellant); *Commonwealth v. Christy*, 511 Pa. 490, 515 A.2d 832, 843 (1986) (prosecutor's argument during penalty phase that society would be victimized again by defendant if he were not sentenced to death was permissible oratorical flair).

Appellant has failed to show how he was prejudiced by these comments. The court's instruction that a prosecutor's comments do not constitute evidence was sufficient to remove any prejudice, as a jury is presumed to follow the court's instructions. *Baez*, at 729. Thus, trial counsel was not ineffective for failing to object. *See Commonwealth v. Kim-*

*ball,* 555 Pa. 299, 724 A.2d 326, 333 (1999). Further, appellant's claim that appellate counsel was ineffective also fails. *See McGill, supra.*

Finally, appellant alleges the trial court erred in failing to instruct the jury that a life sentence in Pennsylvania means life without parole. However, appellant only alleges trial court error, which at the collateral review stage is waived because it was not raised below. *Rush,* at 17-19, 838 A.2d at 660; *see also* 42 Pa.C.S. § 9544(b) (issue is waived if it could have been, but was not, raised before trial, at trial, during unitary review, on appeal or in prior post conviction proceeding). Consequently, only a claim of ineffective assistance of counsel may be raised at this stage. *Rush,* at 17-19, 838 A.2d at 660, 2003 WL 22970873. As appellant has not alleged the ineffectiveness of trial and appellate counsel, this claim has not been preserved for our review. *Id.,* at 17-19, 838 A.2d at 660, 2003 WL 22970873.

Having found appellant is not entitled to relief, we affirm the order of the PCRA court and direct the Prothonotary of this Court to transmit the complete record of this case to the Governor of Pennsylvania. *See* 42 Pa.C.S. § 9711(i).

Order affirmed.

Justice CASTILLE files a concurring opinion.

Justice NIGRO concurs in the result.

Justice SAYLOR files a dissenting opinion in which Chief Justice CAPPY joins.

JUSTICE CASTILLE CONCURRING.

I join the Majority Opinion with the single exception of its characterization of *Commonwealth v. Chambers,* 528 Pa. 558, 599 A.2d 630 (1991) as adopting a *per se* rule that biblical references by a prosecutor are automatically reversible error. Majority slip op. at 7. I recognize that the Majority's discussion of the scope of the *Chambers* rule arguably is *dicta* because the Court's holding ultimately depends not on the scope of the prohibition but on the fact that the remarks in

this case were made before *Chambers* was decided and, thus, counsel cannot be deemed ineffective for failing to anticipate the decision. *Id.* Nevertheless, I write separately because I do not believe that the *Chambers* prohibition is so broad or indiscriminate.

As this Court noted in *Commonwealth v. Spotz*, 562 Pa. 498, 756 A.2d 1139 (2000), *cert. denied*, 532 U.S. 932, 121 S.Ct. 1381, 149 L.Ed.2d 307 (2001):

> [T]he impropriety that *Chambers* and [*Commonwealth v. Brown*, 551 Pa. 465, 711 A.2d 444 (1998)] sought to eradicate was the invocation of biblical or religious authority *in support of* a death penalty verdict. As we explained in *Chambers:* this argument [that the Bible supports the imposition of the death penalty] advocates to the jury that an independent source of law exists for the conclusion that the death penalty is the appropriate punishment for [a defendant].... If a penalty of death is meted out by a jury, it must be because the jury was satisfied that the substantive law of the Commonwealth requires its imposition, not because of some other source of law.

*Id.* at 1164–65 (emphasis original) (quoting *Chambers*, 599 A.2d at 644). *Accord Commonwealth v. Brown*, 567 Pa. 272, 786 A.2d 961, 964–65 (2001) (characterizing *Chambers*); *Commonwealth v. Cook*, 544 Pa. 361, 676 A.2d 639, 651 (1996) (biblical reference did not run afoul of *per se Chambers* rule because prosecutor "did not rely on the Bible to support the death penalty, but made reference to it only to refute appellant's defense to the imposition of the death penalty based entirely on appellant's alleged religious character and his alleged Biblical ties") (alternative holding). Thus, it is settled that *Chambers* does not operate to bar "all biblical references," innocuous or otherwise, but only "reliance upon the Bible as a source, independent of Pennsylvania law, for returning a verdict of death." *Spotz*, 756 A.2d at 1165 n. 24.

JUSTICE SAYLOR DISSENTING.

I respectfully disagree with the majority's reasoning in the rejection of Appellant's ineffectiveness claim involving the impeachment of his co-defendant, Donald Jackson; the rea-

soning and disposition concerning Appellant's claim of counsel's failure to adequately develop and present particular mitigating evidence; and the treatment of the prosecutor's Biblical references in his guilt and penalty phase closing arguments.

First, the majority concludes that the impeachment issue is previously litigated, since, on direct appeal, Appellant challenged trial counsel's failure to impeach Jackson with prior arrests that did not lead to conviction and prior convictions that did not involve crimes of dishonesty. *See Commonwealth v. Stokes,* 532 Pa. 242, 255, 615 A.2d 704, 711 (1992). In the present collateral proceedings, however, Appellant asserts that trial counsel rendered ineffective assistance in failing to investigate and obtain evidence of mental health problems and substance abuse contained in a mental health evaluation and pre-sentence report prepared in connection with Jackson's sentencing for his involvement in the offenses with Appellant. Alternatively, Appellant asserts that such evidence was in the Commonwealth's possession, was exculpatory and, consistent with *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), should have been turned over to trial counsel. In my view, the current claim rests upon different evidentiary grounds and is substantially distinct from the one addressed by this Court on direct review. *See generally Commonwealth v. Peterkin,* 538 Pa. 455, 467, 649 A.2d 121, 126 (1994) (deeming a claim respecting the presentation of penalty phase evidence previously litigated where the appellant failed to show how the current claim was "substantially different from the one finally litigated . . . on direct appeal"). Thus, I do not believe that the Court's prior ruling addressed the merits of the present issue. *See* 42 Pa.C.S. § 9544(a)(2) (stating that an issue is previously litigated where there has been a ruling on the merits).

Nevertheless, I agree with the majority's disposition on this point for a different reason. The mental health of a witness or his ingestion of alcohol or controlled substances is relevant when it affects his ability to perceive or recollect the events at issue or affects his ability to testify. *See Commonwealth v. Rizzuto,* 566 Pa. 40, 60, 777 A.2d 1069, 1081 (2001). In this

case, although the mental health evaluation and pre-sentence report indicate that Jackson had, in the past, suffered a head injury, and ingested alcohol and drugs, there is no indication in either report that such circumstances affected his perception of the events or impaired his ability to testify. Indeed, to the contrary, the mental health evaluation states that Jackson is "well oriented and is memory is intact," and that there is no evidence of "psychotic thinking." Consequently, on this claim, Appellant is not entitled to relief or a hearing.[1]

With respect to Appellant's ineffectiveness contention related to trial counsel's penalty phase investigation and presentation, on direct review, Appellant maintained that counsel: failed to present an adequate closing argument; should have argued the existence of the mitigating circumstance under Section 9711(e)(1) of the Sentencing Code, 42 Pa.C.S. § 9711(e)(1), involving the absence of a history of prior criminal convictions; and should have presented sympathy testimony from family members. *See Stokes*, 532 Pa. at 261–62, 615 A.2d at 714. Appellant's current allegation is premised upon the failure to introduce evidence of his impaired cognitive functioning and difficult childhood. In support, Appellant has proffered affidavits from a psychiatrist and a psychologist, indicating that such mental impairment was in the nature of organic brain damage, was of long-standing nature, and affected his impulse control, reasoning, and judgment. Furthermore, Appellant argues that evidence of his difficult childhood and mental impairment was available to trial counsel and reflected in his school and juvenile records. Because the ruling on direct review did not touch upon the propriety of presenting this evidence, I would not deem such claim previously litigated. Moreover, in my view, Appellant's allegations and proffer were sufficient to create an issue of fact warrant-

1. While under *Commonwealth v. Williams*, 566 Pa. 553, 782 A.2d 517 (2001), this claim might be properly preserved within a general remand based on inadequacy of the pre-dismissal notice afforded by the PCRA court, *see infra* note 2, since *Williams* the Court has narrowed the availability of a remand for non-compliance with the pre-dismissal notice requirement of Rule of Criminal Procedure 909(B)(2)(a). *See Commonwealth v. Rush*, 576 Pa. 3, 838 A.2d 651, 2003 WL 22970873 (Dec. 18, 2003).

ing an evidentiary hearing. *See Commonwealth v. Williams,* 557 Pa. 207, 249, 732 A.2d 1167, 1189–90 (1999).[2] Accordingly, I would remand for fact-finding on this claim.

Finally, I do not subscribe to the majority's view that the Biblical references by the prosecutor during his summations were proper in and of themselves and, therefore, unobjectionable. At the outset, I acknowledge Mr. Justice Castille's point that the *per se* rule articulated in *Commonwealth v. Chambers,* 528 Pa. 558, 599 A.2d 630 (1991), was developed in the context of argumentation concerning imposition of the penalty of death. *See id.* at 586, 599 A.2d at 644. In the guilt phase, however, where the presumption of innocence remains in effect, there is also substantial reason to circumscribe reliance upon religious teachings particularly where, as here, such authority is invoked as a means of judging a defendant's actions and the credibility of the witnesses. Concerning the penalty phase, although, as noted by the majority, there is additional latitude afforded a prosecutor because the presumption of innocence has evaporated, the considerations relevant to the imposition of the penalty at the time of Appellant's trial were statutorily limited to evidence bearing on aggravating and mitigating circumstances. *See* Act of Sept. 13, 1978, P.L. 756, No. 141, § 1311(a)(2); *Commonwealth v. Fisher,* 545 Pa. 233, 266, 681 A.2d 130, 146 (1996).[3]

**2.** Notably, Appellant specifically challenged the adequacy of PCRA court's notice of intention to dismiss the petition without a hearing, which stated that "the issues contained in the PCRA petition filed by your attorney are not genuine issues concerning any material fact(s), have been previously litigated and/or have been waived." Contrary to the suggestion in the majority opinion, such non-specific notices are inadequate. *See* Pa.R.Crim.P. 909(B)(2)(a) (requiring that "the judge shall give notice to the parties of the intention to dismiss the petition and shall state in the notice the reasons for dismissal"); *Williams,* 566 Pa. at 569, 782 A.2d at 527 (observing that, "where dismissal is deemed the appropriate course, the court must obviously provide sufficiently specific reasons for the disposition such that the potential for amendment may be reasonably evaluated by counsel" and holding that a notice indicating only that "the issues raised in the PCRA Petition filed by your attorney are without merit" was inadequate).

**3.** The death penalty statute has since been amended to permit consideration of victim impact evidence by the jury in weighing aggravating and mitigating circumstances.

Here, certain of the prosecutor's comments may be construed as indicating that because Appellant was not merciful by Biblical standards, he was not entitled to mercy under the law. As such commentary implicated considerations outside those delineated in the death penalty statute, I believe that it was improper.

However, as defense counsel specifically invoked the Bible in his guilt and penalty-phase closing remarks, I would treat the prosecutor's references as invited response and, therefore, conclude that Appellant has not demonstrated prejudice. *See United States v. Young,* 470 U.S. 1, 12, 105 S.Ct. 1038, 1045, 84 L.Ed.2d 1 (1984) (explaining the invited response doctrine as not granting a prosecutor "license to make otherwise improper arguments," but rather, as a component in an evaluation of prejudice based upon contextual considerations); *accord Commonwealth v. Cook,* 544 Pa. 361, 381–83, 676 A.2d 639, 649–50 (1996). Notably, Appellant has not raised a challenge to his trial counsel's strategy in this regard.

Chief Justice CAPPY joins this dissenting opinion.