959 A.2d 306

**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Ralph Trent STOKES, Appellant.**

Supreme Court of Pennsylvania.

Submitted July 9, 2008.

Decided Nov. 21, 2008.

Cristi A. Charpentier, Michael Wiseman, Helen A. Marino, Defender Ass'n of Philadelphia, for Ralph Trent Stokes, appellant.

Hugh J. Burns, Philadelphia Dist. Attorney's Office, Amy Zapp, Harrisburg, for the Com. of PA., appellee.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY and GREENSPAN, JJ.

## OPINION

Justice GREENSPAN.

This is a collateral capital appeal from an order dismissing Appellant Ralph Trent Stokes's second petition for relief under the Post Conviction Relief Act (PCRA), 42 Pa.C.S.

§§ 9541–9546. Because we conclude that the petition was not timely, we affirm the order of the PCRA court.

On March 11, 1982, Appellant and Donald Jackson robbed Appellant's employer, a restaurant known as Smokin' Joe's Korner, in Philadelphia. Armed with guns, Appellant and Jackson entered the restaurant before it opened. Appellant herded the employees into the walk-in refrigerator and threatened to kill them if they failed to cooperate. Despite the fact that Appellant wore a ski mask, some of the employees recognized him. In response to being identified by his co-workers, Appellant shot and killed two of them, Mary Louise Figueroa and Eugene Jefferson. Appellant terrorized and threatened two other employees, Renard Mills and Pierre Blassingame, but did not shoot them. However, when a United States Postal Service employee happened onto the scene, Appellant shot him in the head, killing him.

Both Appellant and Jackson were arrested and charged with the murders. Jackson cooperated with the Commonwealth and agreed to testify against Appellant in exchange for a guilty plea to second-degree murder and a life sentence. The Commonwealth proceeded to trial against Appellant and sought the death penalty. At trial, Jackson testified that he willingly participated in the armed robbery that Appellant had devised. However, Jackson told the jury, the shootings were not part of the plan and Appellant killed his co-workers because they would have identified him. Mills, who escaped death on the day of the robbery, also testified for the Commonwealth. He knew Appellant from working with him at a previous job. Mills described the robbery and the murder of his co-workers; he too identified Appellant as the shooter.

On July 22, 1983, the jury found Appellant guilty of three counts of first-degree murder and related charges. Following a penalty hearing, the jury found two aggravating circumstances: creating a grave risk of death to another person in addition to the victim of the offense, pursuant to 42 Pa.C.S. § 9711(d)(7); and killing while in the perpetration of a felony,

pursuant to 42 Pa.C.S. § 9711(d)(6). The jury found no mitigating circumstances.[1]

New counsel was appointed for post-verdict proceedings and in May 1987 the trial court held hearings on counsel's motions, which included claims of ineffective assistance of trial counsel. In January 1990, the trial court issued an opinion in support of its denial of post-verdict motions. In October 1992, on direct appeal, this Court affirmed Appellant's convictions and death sentence. *Commonwealth v. Stokes*, 532 Pa. 242, 615 A.2d 704 (1992).[2]

Appellant filed his first PCRA petition in November 1996, which the PCRA court denied without a hearing in October 2000.[3] This Court affirmed the denial of collateral relief in December 2003. *Commonwealth v. Stokes*, 576 Pa. 299, 839 A.2d 226 (2003).[4] In February 2004, Appellant successfully sought a stay of execution in federal court and, with present counsel, pursued a petition for writ of habeas corpus. During these federal proceedings, counsel sought and received records from files maintained by the United States Postal Service (USPS) and the Philadelphia Police Department Homicide Division (PPD). On July 26, 2004, Appellant filed a second PCRA petition. In it, he alleged that documents in the USPS and PPD files included exculpatory evidence that should have been turned over to Appellant at time of trial. Appellant asserted that the Commonwealth's failure to disclose this

1. Appellant argued that his age was a mitigating factor, as was the fact that he was innocent of the charges.

2. This Court reversed the jury's finding of one of the aggravating circumstances (creating a grave risk of death), but nonetheless affirmed the death sentence, relying on the remaining aggravating circumstance (killing in the perpetration of a felony) and the lack of any mitigating circumstances. *Stokes*, 615 A.2d at 713–14.

3. Despite the fact that Appellant's petition was filed over three years after his judgment of sentence became final, his petition was timely as it was governed by the 1995 amendments to the PCRA, which provide a grace period for the filing of a first petition until January 16, 1997.

4. Justice Saylor, joined by Chief Justice Cappy, filed a dissenting opinion and would have remanded for an evidentiary hearing on counsel's alleged failure to develop and present mitigation evidence at the penalty phase. *Stokes*, 839 A.2d at 234.

information constituted a violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), entitling him to a new trial, or in the alternative, an evidentiary hearing on the issues raised.[5]

The PCRA court denied Appellant's second petition without a hearing because it was not filed within the PCRA time limitations. Notwithstanding its conclusion that the petition was untimely, the PCRA court, the Honorable C. Darnell Jones, II, separately considered each issue Appellant raised and determined that not one met the standard set forth in *Brady.* Specifically, the PCRA court concluded that Appellant failed to establish that the prosecution suppressed "either exculpatory or impeachment evidence that was favorable to [Appellant and caused Appellant] prejudice." PCRA Ct. Op. at 12 (citing *Commonwealth v. Morris,* 573 Pa. 157, 822 A.2d 684, 696 (2003)). The matter is now properly before us on appeal.

 Our standard of review of the denial of PCRA relief is clear: we are "limited to determining whether the PCRA court's findings are supported by the record and without legal error." *Commonwealth v. Hawkins,* 953 A.2d 1248, 1251 (Pa.2006). We note that a second or subsequent petition must present a strong prima facie showing that a miscarriage of justice may have occurred. *Commonwealth v. Carpenter,* 555 Pa. 434, 725 A.2d 154, 160 (1999). Finally, the petition must be timely, as the Act's timeliness restrictions are jurisdictional in nature and are to be strictly construed. *Commonwealth v. Abu–Jamal,* 596 Pa. 219, 941 A.2d 1263, 1267–68 (2008).

There is no question that the instant petition is untimely on its face; it was filed over ten years after the judgment of sentence became final. Appellant insists that the PCRA time

**5.** Appellant lists nine categories of allegedly exculpatory evidence that he claims were discovered in the USPS and PPD files. These include an FBI lab report showing the lack of a definitive link between evidence seized from Appellant's home and evidence from the crime scene, drafts of affidavits and plea agreements, and impeachment evidence that could have been used against several Commonwealth witnesses on issues of prior criminal conduct and statements that were inconsistent with those of other witnesses.

bar is overcome by the application of two statutory exceptions, to wit: 1) interference by government officials, under 42 Pa.C.S. § 9545(b)(1)(i); and 2) facts unknown to the petitioner that could not have been ascertained by the exercise of due diligence, under 42 Pa.C.S. § 9545(b)(1)(ii). Appellant relies on the prosecution's alleged *Brady* violations to satisfy both exceptions.

█ Appellant recognizes that in order to invoke either exception to the Act's timeliness provision, there is a requirement that a petitioner file his claim "within 60 days of the date the claim could have been presented." 42 Pa.C.S. § 9545(b)(2). This Court has made it clear that the 60–day rule requires a petitioner to plead and prove that the information on which he relies could not have been obtained earlier, despite the exercise of due diligence. *Commonwealth v. Marshall,* 596 Pa. 587, 947 A.2d 714, 720 (2008). Thus, with respect to both claimed exceptions, Appellant is required to show that he could not have filed his claim earlier. *Id.* (citing *Commonwealth v. Breakiron,* 566 Pa. 323, 781 A.2d 94, 98 (2001)).

█ According to Appellant, he satisfied the 60–day rule here because he filed his petition less than 60 days after receiving the USPS file which, he asserts, contained evidence of the Commonwealth's alleged *Brady* violations. This is true, Appellant insists, because the Commonwealth's deliberate suppression of the information prevented him from learning of the evidence. Appellant focuses the majority of his initial brief on the standard for a merits assessment of a *Brady* claim and his argument that he meets this standard. But the law is clear that neither of the statutory exceptions to the timeliness requirement can begin with a discussion of the merits of a *Brady* claim; rather, Appellant must begin with a discussion of why the instant petition was timely filed. As this Court has explained, the latter inquiry is separate and distinct from the former. *See Abu–Jamal, supra* at 1268 (noting that the merits of an underlying *Brady* claim is not relevant to resolving a timeliness issue under either § 9454(b)(1)(i) or (ii)).

■ Thus, the proper questions with respect to timeliness in this case are whether the government interfered with Appellant's access to the USPS and PPD files, and whether Appellant was duly diligent in seeking those files. The PCRA court determined that there was no government interference, and that Appellant was not duly diligent, because the record established that Appellant was aware of the existence of the USPS and the PPD files for years before he sought them. We agree. Appellant has never asserted that the prosecution (or anyone else) prevented him from gaining access to these files in the 12 years between the date his direct appeal was decided and the date he ultimately sought the files. The fact that multiple agencies commenced investigations in this case was known to Appellant at the time of trial, at post-verdict proceedings, and on direct appeal, all of which were completed over a decade before Appellant filed the instant petition.[6] Indeed, in 1986, post-verdict counsel described the police department's separate investigative file, which he asserted that trial counsel had not examined. Notes of Testimony (N.T.), 9/10/86 at 5. Appellant's instant petition characterized the USPS Inspectors as conducting an investigation "separate and apart from that conducted by the Philadelphia Police Department" and relies on *trial* testimony for this fact. PCRA Petition at ¶ 19.

In response to the PCRA court's reliance on Appellant's prior knowledge that these files existed, Appellant returns to the merits of his *Brady* claim. In his Reply Brief, he refers us to the Commonwealth's argument that the trial prosecutor maintained an " 'open file' policy, and permitted trial counsel to peruse everything they had." Appellant's Reply Brief at 1 (citing Appellee's Brief at 22). On this point, Appellant urges

**6.** This case is complicated by the fact that all of counsels' files evidently were incomplete, even with respect to items admittedly turned over. Appellant's trial counsel apparently died sometime in 2002. Before that date, in April 2000, Appellant's counsel for his first PCRA petition filed a motion for discovery, asserting that he had contacted all prior counsel and learned that their files "did not contain any of the evidence provided at trial." Commonwealth's Motion to Dismiss, Exhibit B, Defense Motion for Discovery, at ¶ 1. The record does not contain a disposition of the discovery motion.

us to consider the United States Supreme Court decision in *Strickler v. Greene,* 527 U.S. 263, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999). In *Strickler,* the Court held that the petitioner reasonably relied on the prosecutor's open file policy to explain his procedural default in raising a *Brady* claim. *Id.* at 284, 119 S.Ct. 1936. The *Strickler* court held that "if a prosecutor asserts that he complies with Brady through an open file policy, defense counsel may reasonably rely on that file to contain all materials the State is constitutionally obligated to disclose under Brady." *Id.* at 283 n. 23, 119 S.Ct. 1936.

This case differs from *Strickler* in several important respects, the primary one being that in *Strickler* the Court considered the propriety of a federal habeas matter, while in this case our task is to determine whether Appellant has satisfied either of two statutory exceptions to the state PCRA's timeliness requirement. Further, the Commonwealth here did not offer the prosecutor's "open file" policy to establish that Appellant in fact received from the prosecutor the documents he later discovered in the USPS and PPD files. Rather, the Commonwealth made the "open file" argument in an effort to explain the breadth of trial counsel's knowledge of those who were involved in the case, including the names of the detectives and postal inspectors who worked on the matter. Appellee's Brief at 23. As the Commonwealth asserts, there is "simply no indication ... [in Appellant's pleadings] that any of these actors withheld any relevant information from counsel." *Id.* Finally, we observe that the *Strickler* Court expressly declined to address "the impact of a showing by the State that the defendant was aware of the existence of the documents in question and knew, or could reasonably discover, how to obtain them." *Strickler, supra* at 288 n. 33, 119 S.Ct. 1936.

■ Appellant's argument is essentially that a *Brady* claim operates to negate—wholly—the statutory timeliness requirements set forth in the PCRA. Appellant's reasoning would permit a PCRA petition to be filed *at any time,* as long as the claim is couched in terms of a *Brady* violation. But this Court has explicitly held otherwise. *See Abu–Jamal, supra* at 1268

(concluding that not only must a petitioner assert that "the facts upon which the *Brady* claim is predicated were not previously known to the petitioner," but also that they "could not have been ascertained through due diligence"). *See also Hawkins, supra* at 1253 ("Although a *Brady* violation *may* fall within the governmental interference exception, the petitioner must plead and prove that the failure to previously raise these claims was the result of interference by government officials, and that the information could not have been obtained earlier with the exercise of due diligence.") (citation omitted) (emphasis supplied).

Because the record reflects that Appellant was aware of the files upon which he now relies several years before he ever sought them, and because Appellant failed to explain why he did not request these files earlier, he did not establish the due diligence required to excuse him from over a decade of inaction. Appellant has not explained why it is that he sought the files in 2004, but failed to do so earlier. Nor does he describe how it was that he was able to acquire the documents in 2004, but could not do so before that date. Appellant has not satisfied either of his claimed exceptions to the PCRA's timeliness requirement.

The PCRA court's order dismissing Appellant's petition as untimely is affirmed.

Order affirmed.[7]

Justice McCAFFERY did not participate in the consideration or decision of this case.

Chief Justice CASTILLE, Justices SAYLOR, EAKIN and BAER and Justice TODD join the opinion.

---

7. The Prothonotary of the Supreme Court is directed to transmit the complete record of this case to the Governor pursuant to 42 Pa.C.S. § 9711(i).