**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DANIEL CARL WYANT | : | |
| | : | |
| Appellant | : | No. 1479 WDA 2024 |

Appeal from the PCRA Order Entered November 12, 2024
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0000307-1992

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DANIEL CARL WYANT | : | |
| | : | |
| Appellant | : | No. 1480 WDA 2024 |

Appeal from the PCRA Order Entered November 12, 2024
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0000249-1992

BEFORE:  McLAUGHLIN, J., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY LANE, J.:                         **FILED: July 18, 2025**

Daniel Carl Wyant ("Wyant") appeals from the orders dismissing his serial petition[1] filed under the Post Conviction Relief Act ("PCRA").[2]  We affirm.

---

[1] The Commonwealth charged Wyant at two separate criminal dockets related to the December 9, 1991 incident, and Wyant filed identical petitions at both dockets.  For ease of review, we refer to a singular petition in this decision.

[2] **See** 42 Pa.C.S.A. §§ 9541–9546.

In 1992, a jury convicted Wyant of killing Donald Kremer ("Kremer" or "the victim") during a robbery on December 9, 1991. We set forth the underlying facts in our memorandum affirming Wyant's judgment of sentence on direct appeal:

> [Wyant] and [co-defendant] Robert Grinnell (["]Grinnell["]) met J.J. Acosta [("Acosta")] along State Street in Erie, Pennsylvania, an area frequented by [gay men]. [Acosta] told [Wyant] that he was in the area "yanking" people. At this time, [Wyant] was in possession of a .25 caliber, semi-automatic pistol. [Wyant] and Grinnell entered into an agreement to rob any [gay man] who tried to pick one of them up. Thereafter, the victim, driving a green car, approached the three men, waiving for them to come over to the car. [Wyant] entered the car and instructed the victim to drive over to the train station. [Wyant] was to act as a decoy and then all three men would "overpower [the victim] and take the money and [they] were going to split it three ways." It was during the events that transpired in the car that [Wyant] shot the victim. In a statement taken by police, [Wyant] claimed that the victim tried to grab him and, as he was trying to get away, the gun fired.

***Commonwealth v. Wyant***, 647 A.2d 268 (Pa. Super. 1994) (unpublished memorandum at 2) (citation to transcript omitted).

We briefly discuss portions of the closing arguments that are pertinent to the present appeal. Wyant conceded during closing that he, Grinnell, and Acosta conspired to "get . . . Kremer's money, or the money of someone who they expected to stop there and try to pick up one of the boys because that's what they went to that location for." N.T., 5/14/92, at 14. He argued that "Kremer began to reach for him and to grab him immediately" when Wyant entered the car. ***Id***. at 17. Wyant claimed that he tried to abort the robbery and exit the car but "Kremer drove . . . to a relatively secluded and dark spot,"

- 2 -

suggesting that Wyant was not "in control of the situation." *Id*. at 17-18. Even after "[Wyant] took out the gun" Kremer "continued to come after him and to grab at him." *Id*. at 18-19. He then accidentally fired the gun.

The Commonwealth responded in its closing argument that Wyant and Grinnell's "whole plan involve[d] getting in the car with someone you know is gay, luring him to a quiet secluded place on the theory that you are going to be selling sexual favors for money." *Id*. at 67. The prosecutor rhetorically asked, "[Y]ou and your buddies are going to rob him and you are going to be somehow shocked . . . if the guy touches your leg? Come on." *Id*. The Commonwealth asked the jury to reject the "self-serving aspects" of the defendants' statements. *Id*. Specifically addressing Wyant, the prosecutor asked the jury to discount his statement that Kremer "continue[d] to make sexual advances" even after Wyant threatened him with a firearm. *Id*. at 71.

As noted, we affirmed on direct appeal. Wyant did not seek further review. He filed a total of six PCRA petitions over the next twenty-seven years.[3]

---

[3] We affirmed four of the PCRA court's orders denying relief to Wyant. *See Commonwealth v. Wyant*, 241 A.3d 445 (Pa. Super. 2020) (unpublished memorandum); *Commonwealth v. Wyant*, 81 A.3d 993 (Pa. Super. 2013) (unpublished memorandum); *Commonwealth v. Wyant*, 29 A.3d 831 (Pa. Super. 2011) (unpublished memorandum); *Commonwealth v. Wyant*, 698 A.2d 673 (Pa. Super. 1997) (unpublished memorandum). An appeal docketed at 384 WDA 2017 was dismissed for the failure to file a brief, and an appeal docketed at 267 WDA 2013 was discontinued at Wyant's request.

On May 8, 2024, Wyant filed the underlying counseled PCRA petition, his seventh. Therein, Wyant purported to raise two substantive claims based on his discovery that his trial counsel, John Moore, Esquire ("Attorney Moore"), had represented Kremer in criminal proceedings months before his murder. Wyant's first PCRA claim argued that Attorney Moore had divided loyalties, which adversely affected his performance in several ways. According to Wyant, various "acts and omissions [of Attorney Moore] benefit[t]ed . . . Kremer at the expense of . . . Wyant, and, as such, prove that the conflict of interest adversely affected [Attorney] Moore's performance." PCRA Petition, 5/8/24, at 17. The second claim alleged that the Commonwealth's argument in closing that Wyant's account was self-serving violated Wyant's constitutional due process rights. In Wyant's view, the criminal charges against Kremer established that the Commonwealth "knew full well that Kremer had a prior history of the same sexual abuse of children Wyant accused him of engaging in with him." *Id*. at 55.

Wyant acknowledged that his petition was facially untimely but argued that the newly discovered facts and governmental interference exceptions to the PCRA's timeliness requirements applied. In support, the petition detailed information conveyed to him by his friend, Deborah Mongenel ("Mongenel"). According to Mongenel's declaration attached to the petition, on November 27, 2023, she submitted a Right-to-Know Law ("RTKL")[4] request to the Clerk

---

[4] *See* 65 P.S. §§ 67.101-67.3104.

of Courts for Erie County for information regarding Kremer's criminal history. The next day, the Clerk of Courts transmitted a criminal information and several additional documents regarding charges filed against Kremer in 1991. The criminal information charged Kremer with, among other crimes, criminal solicitation and corruption of minors related to an incident where Kremer provided beer to a seventeen-year-old and offered money for sex. The materials provided by Mongenel further revealed that on September 9, 1991, the Erie County District Attorney moved to admit Kremer into the county's Accelerated Rehabilitative Disposition ("ARD") program. A separate document signed that same date by Kremer and Attorney Moore waived Kremer's speedy trial rights and agreed to the ARD placement. According to her declaration, Mongenel mailed the documents to Wyant on November 29, 2023.

The PCRA court issued a notice of intent to dismiss pursuant to Pa.R.Crim.P. 907, concluding that the petition was untimely and that Wyant failed to plead an exception to the PCRA's time bar. Wyant did not file a response to the Rule 907 notice. The PCRA court dismissed the petition on November 12, 2024. Wyant filed timely notices of appeal at each docket. Both he and the trial court complied with Pa.R.A.P. 1925.

Wyant raises the following issues for our review:

1. Did the PCRA court err in dismissing as untimely a conflict of interest claim in this murder case without first holding a hearing at which Wyant would have proven what he pled: that the claim met (a) the newly[ ]discovered facts exception to the time-bar because Wyant was unaware that his trial counsel jointly represented the murder victim on his own child sexual abuse case (with profound implications for Wyant's defense)

- 5 -

and could not have discovered that information sooner with the exercise of due diligence and (b) the governmental interference exception because the Commonwealth knowingly concealed counsel's debilitating conflict?

2. Did the PCRA court err in dismissing as untimely the claim that the Commonwealth knowingly argued false evidence to the jury without first holding a hearing at which Wyant would have proven what he pled: that he met both the newly[ ]discovered facts and governmental interference exceptions to the time-bar?

Wyant's Brief at 3.

We review the denial of PCRA relief to determine whether the record supports the PCRA court's factual determinations and its legal conclusions are free of error. *See Commonwealth v. Ortiz-Pagan*, 322 A.3d 247, 251 (Pa. Super. 2024). When supported by the record, the PCRA court's credibility determinations are binding on this Court. *See id*. However, we review the court's legal conclusions *de novo*. *See id*. We confine our review to the findings of the PCRA court and the evidence of record, which we view in the light most favorable to the Commonwealth, the party who prevailed below. *See id*. "To obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing." *Commonwealth v. Brown*, 196 A.3d 130, 193 (Pa. 2018) (citation omitted).

A PCRA petition must be filed within one year of the date the judgment of sentence becomes final. *See* 42 Pa.C.S.A. § 9545(b)(1). A judgment of sentence becomes final under the PCRA at the conclusion of direct review,

including discretionary review in the Supreme Court of Pennsylvania, or at the expiration of time for seeking such review. **See** 42 Pa.C.S.A. § 9545(b)(3). "PCRA time limits are jurisdictional in nature, implicating a court's very power to adjudicate a controversy." **Commonwealth v. Ali**, 86 A.3d 173, 177 (Pa. 2014).

As explained above, Wyant did not seek further review after we affirmed his judgment of sentence on direct appeal on May 10, 1994. His sentence became final thirty days following our decision, when his time for seeking review in our Supreme Court expired. **See** Pa.R.A.P. 1113(a). As Wyant filed the instant petition on May 8, 2024, it is facially untimely.

The General Assembly authorizes Pennsylvania courts to consider an untimely PCRA petition only if the petitioner explicitly pleads and proves one of three exceptions set forth under Section 9545(b)(1). These exceptions are as follows:

> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
>
> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
>
> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S.A. § 9545(b)(1)(i)-(iii).

Any petition attempting to invoke one of these exceptions "shall be filed within one year of the date the claim could have been presented." 42 Pa.C.S.A. § 9545(b)(2). Our Supreme Court has emphasized that "it is the petitioner who bears the burden to allege and prove that one of the timeliness exceptions applies." ***Commonwealth v. Marshall***, 947 A.2d 714, 719 (Pa. 2008) (citation omitted).

Pertinently, to demonstrate governmental interference, the petition must plead and prove that "the failure to raise the claim previously was the result of interference by government officials[.]" 42 Pa.C.S.A. § 9545(b)(1)(i). While not contained within the statutory text, our Supreme Court requires the petitioner to establish that he acted with due diligence in obtaining the information that formed the basis of his claim. ***See Commonwealth. v. Stokes***, 959 A.2d 306, 311 (Pa. 2008).

To invoke the newly discovered facts exception, the petitioner must allege and prove that the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence. ***See*** 42 Pa.C.S.A. § 9545(b)(1)(ii). "Due diligence demands that the petitioner take reasonable steps to protect his own interests; a petitioner must explain why he could not have learned the new facts earlier with the exercise of due diligence." ***Commonwealth v. Mickeals***, 335 A.3d 13, 21 (Pa. Super. 2025) (citation omitted).

Additionally, in assessing whether the PCRA petition alleges and proves a timeliness exception, we do not assess the merits of the underlying claims

the petitioner intends to pursue. ***See Commonwealth v. Cox***, 146 A.3d 221, 227–28 (Pa. 2016) (stating that "[o]nce jurisdiction has been properly invoked . . . the relevant inquiry becomes whether the claim is cognizable under the PCRA"). However, "the newly discovered facts exception, as well as the requirements of Section 9545(b)(2) of the PCRA, are claim specific, not petition based." ***Commonwealth v. Rivera***, 324 A.3d 452, 468 (Pa. 2024). Similarly, "[t]he governmental interference exception also is claim specific." ***Id***. at 469 n.19. We therefore separately address for each claim whether Wyant established that either exception applied.

In his first issue, Wyant argues that his petition adequately pled both the newly discovered facts exception and the governmental interference exception to, at minimum, justify an evidentiary hearing regarding his claim that Attorney Moore had a conflict of interest based on his prior representation of Kremer. He contends that he met the newly discovered facts exception because Kremer's criminal history was unknown to him until Mongenel's RTKL request, and he filed the claim within one year of Mongenel supplying the relevant documents to him. Additionally, he argues that he met the governmental interference exception because he adequately pled and would have proven that the Commonwealth interfered with the presentation of this claim by failing to disclose Attorney Moore's conflict to either the trial court or Wyant, despite knowing of the charges against Kremer and Attorney Moore's role in those proceedings. In this regard, Wyant emphasizes that Kremer accepted ARD and those proceedings are sealed.

Wyant argues that "the PCRA court erroneously asked only whether Wyant could have found this information if he had tried, disregarding entirely that Wyant had no reason to look." Wyant's Brief at 11. He asserts that there was "no case-related reason to investigate" whether Attorney Moore had previously represented Kremer, as it was the duty of both the Commonwealth and Attorney Moore to disclose that fact to Wyant. *Id*. at 22. He maintains that a defendant "may presume, given the regulation of the legal profession and counsel's ethical obligations to scrupulously avoid conflicts of interest, that his attorney did not labor under a conflict." *Id*. at 20. Accordingly, Wyant argues that the fact he could have independently obtained the records is irrelevant.

The PCRA court concluded, in pertinent part, that there was "no reason Attorney Moore's prior representation of Kremer could not have been ascertained through the exercise of due diligence." Rule 907 Notice, 10/22/24, at 5.[5] The court noted that Wyant "was represented by multiple attorneys from at least 2008 to 2016. No reason was advanced why [Wyant], through prior counsel, could not have investigated the victim's background for facts involving his earlier criminal case . . . ." *Id*.

As a prefatory matter, we note that Wyant cites dozens of federal cases to establish that he acted with due diligence, including the United States

---

[5] In its Rule 1925 opinion, the PCRA court relied on the rationale previously stated in its Rule 907 notice and incorporated that document by reference. *See* PCRA Court Opinion, 2/4/25, at 1.

Supreme Court's decision in **Williams v. Taylor**, 529 U.S. 420 (2000). **See** Wyant's Brief at 22-23 ("The Supreme Court's decision in **Williams** . . . makes clear that Wyant exercised due diligence."). However, Wyant fails to acknowledge that the cited cases do not interpret the PCRA's statutory language and would not be binding even if they did. Indeed, our Supreme Court has rejected a similar attempt to treat **Williams** as relevant to an analysis of the PCRA, as that case "interpreted 28 U.S.C. § 2254(e)(2) . . . regarding the ability to obtain an evidentiary hearing in a federal habeas corpus action." **Commonwealth v. Breakiron**, 781 A.2d 94, 100 n.8 (Pa. 2001); **see also Stokes**, 959 A.2d at 311 (rejecting the appellant's reliance on a United States Supreme Court decision because the High Court "considered the propriety of a federal habeas matter, while in this case our task is to determine whether [the appellant] has satisfied either of two statutory exceptions to the state PCRA's timeliness requirement").

The proper question is simply whether the PCRA court correctly ruled as a matter of law that Wyant failed to exercise due diligence as required by the PCRA and relevant caselaw. We agree with the PCRA court that Wyant's failure to explain why he never attempted to seek any information regarding the victim defeats his claim.

Wyant's argument rests on the premise that he had no due diligence obligations whatsoever because it was incumbent upon Attorney Moore and the Commonwealth to disclose Attorney Moore's prior representation of Kremer. Wyant therefore maintains that he was entitled to passively rely on

a third party supplying the information to him. In some circumstances, a PCRA petitioner may not have proactive obligations. For instance, in our recent decision in **Commonwealth v. Hereford**, 334 A.3d 903 (Pa. Super. 2025) (*en banc*), a jury convicted Isaiah Hereford ("Hereford") of murdering an occupant of an apartment during a robbery. Hereford filed a PCRA petition citing the newly discovered facts exception, asserting "that a previously unknown eyewitness . . . had come forward in February 2020 and would testify that Hereford was not involved in the shootings." **Id**. at 906. We rejected the Commonwealth's argument that Hereford failed to take reasonable steps to protect his own interests, as the PCRA court had credited the witness's declaration that "he did not tell anyone what he saw on the night of the murders until he contacted Hereford's counsel because he was a known trespasser and drug dealer in [the apartment complex]." **Id**. at 908.

We do not agree with Wyant that this is a case where he could rely on a third party coming forward with information that he could not have uncovered with due diligence. In the analogous context of cases involving information that the Commonwealth was required to disclose in discovery, our case law requires the defendant to establish due diligence. In **Stokes**, Ralph Trent Stokes ("Stokes") obtained files from the United States Postal Service[6] and Philadelphia Police Department and invoked the newly discovered facts

---

[6] Stokes had murdered a postal service employee who happened upon Stokes and his co-defendant robbing a restaurant.

and governmental interference exceptions to support a claim under **Brady v. Maryland**, 373 U.S. 83 (1963). The Court concluded that Stokes failed to establish due diligence and rejected his "argument . . . that a **Brady** claim operates to negate — wholly — the statutory timeliness requirements set forth in the PCRA." **Stokes**, 959 A.2d at 311. Regardless of the Commonwealth's obligations to turn over the material in the first place, Stokes "was aware of the files upon which he now relies several years before he ever sought them, and because [Stokes] failed to explain why he did not request these files earlier, he did not establish the due diligence required to excuse him from over a decade of inaction." **Id**. Relatedly, Stokes failed to explain "why it is he sought the files in 2004, but failed to do so earlier." **Id**.

Similarly, Wyant was aware that Attorney Moore represented him. That alone supplied a sufficient basis to investigate for potential conflicts, especially when, as he now maintains, Attorney Moore failed to adequately investigate potential defenses. **See** Wyant's Brief at 51 ("Had [Attorney] Moore been more interested in presenting a case that Kremer was the catalyst for the shooting in order to support his chosen defense of manslaughter/third-degree murder, he would have secured . . . beneficial evidence from Wyant's family."). Such palpable disinterest would have been known to Wyant, and he failed to plead in his PCRA petition why he did not conduct any investigation of his own regarding his trial counsel in the decades since his conviction. Moreover, Wyant would have had particular cause to investigate whether Attorney Moore had a conflict of interest in light of the fact that he alleged in

a prior PCRA petition that his co-defendant's counsel had an alleged conflict of interest. *See* PCRA Petition, 12/16/08, at 8-11 (invoking newly discovered fact and governmental interference exceptions to raise a claim that Grinnell's counsel had a conflict of interest where his paralegal was in a romantic relationship with the trial prosecutor at the time of trial). Therefore, the PCRA court correctly determined that the newly discovered evidence exception did not apply.

We now turn to the governmental interference exception. The PCRA court concluded that the due diligence analysis resolved this issue. *See* Rule 907 Notice, 10/22/24, at 7 ("As discussed in the previous section, Petitioner failed to successfully plead and prove why [the] information concerning Attorney Moore's previous representation of the victim through the exercise of due diligence, could not have been obtained earlier.").

We agree. As the PCRA court correctly concluded, our Supreme Court has held that the governmental interference exception requires a petitioner to act with due diligence. *See Stokes*, 959 A.2d at 311. The Court has recently "acknowledge[d] that questions may endure about the appropriateness of a due diligence inquiry when analyzing timeliness under Section 9545(b)(1)(i) of the PCRA." *Commonwealth v. Towles*, 300 A.3d 400, 417 n.18 (Pa. 2023). Wyant, citing that observation from *Towles* and the concurring

opinions by Justices Donohue and Wecht in that case,[7] specifically argues that this exception "imposes no diligence requirement." **See** Wyant's Brief at 34-35.

Regardless of whether we agree with Wyant's argument, this Court may not overrule binding case law of our Supreme Court. **See Commonwealth v. Foley**, 38 A.3d 882, 892 (Pa. Super. 2012) (explaining that this Court has a "duty and obligation to follow the decisional law of" our Supreme Court and "[i]t is not our function to attempt reversing viable Supreme Court rulings"). The majority in **Towles** explained that existing precedent imposes a due diligence requirement on petitioners invoking the governmental interference exception, and the Court declined to revisit the matter in its opinion, reserving the issue "for another day and another case." **Towles**, 300 A.3d at 414 n.14, 417 n.18.

We therefore conclude that the governmental interference exception does not apply to Wyant's PCRA claim premised on Attorney Moore's conflict of interest, as he failed to plead that he exercised due diligence in uncovering the factual predicate of the claim. Because Wyant failed to plead the

---

[7] **See Towles**, 300 A.3d at 418 (Donohue, J., concurring) (arguing that "case law . . . concluding that th[e governmental interference] exception contains a due diligence component . . . is patently incorrect"); **id**. at 422 (Wecht, J., concurring) (agreeing "with Justice Donohue that our precedent grafting a due diligence requirement onto the governmental interference exception is misguided").

applicability of a timeliness exception regarding his claim that Attorney Moore had a conflict of interest, Wyant's first issue merits no relief.

In Wyant's second issue, he argues that he established the applicability of the newly discovered facts and governmental interference exceptions with respect to his claim that the Commonwealth falsely argued in closing that Wyant's account of Kremer's sexual advances was self-serving. Similar to Wyant's claim regarding Attorney Moore's alleged conflict of interest, the factual predicate for this claim is the existence of criminal charges against Kremer, which he discovered when Mongenel forwarded him the results of her RTKL request in November 2023. In Wyant's view, Kremer's criminal history established "that Kremer had a prior history of the same sexual abuse of children Wyant accused him of engaging in with him." PCRA Petition, 5/8/24, at 55.

For all the reasons set forth in our analysis of Kremer's first issue, we conclude that Wyant failed to establish that either timeliness exception applied. Our conclusion that Wyant failed to establish due diligence in investigating Kremer's criminal history applies equally here as to the newly discovered facts and governmental interference exceptions. Therefore, Wyant's second issue does not afford him relief.

Wyant has failed to show that the PCRA court erred in dismissing his petition without a hearing on the basis that he did not adequately plead an exception to the PCRA's time bar. We therefore affirm.

Orders affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 7/18/2025