J-S83028-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| STEVEN BLEAU | : | |
| Appellant | : | No. 2232 EDA 2017 |

Appeal from the PCRA Order June 20, 2017
In the Court of Common Pleas of Chester County Criminal Division at
No(s): CP-15-CR-0000443-1988

BEFORE: GANTMAN, P.J., OLSON, J., and DUBOW, J.

MEMORANDUM BY OLSON, J.:                    **FILED FEBRUARY 05, 2018**

Appellant, Steven Bleau, appeals *pro se* from the order entered on June 20, 2017, dismissing his fourth petition filed under the Post-Conviction Relief Act (PCRA), 42 Pa.C.S.A. § 9541-9546. We affirm.[1]

We have previously summarized the facts underlying Appellant's convictions and some of the procedural posture leading to Appellant's fourth PCRA petition. As we explained:

---

[1] Appellant filed a motion for permission to supplement his brief, so that he can allege some sort of unspecified "newly discovered evidence." **See** Appellant's "Motion for Leave of Court to Supplement Brief with Additional Newly Discovered Evidence" (hereinafter "Appellant's Motion"), 12/26/17, at 1. On January 22, 2018, Appellant filed an application to withdraw Appellant's Motion. We grant the application to withdraw and, therefore, do not consider the merits of Appellant's Motion.

On the morning of November 30, 1987, at approximately 10:00 a.m., the body of Mabel Toledo [("Toledo")] and that of a dying George Montgomery [("Montgomery")] were discovered by Arthur (Moe) Jackson [("Jackson")] in his home at 165 Glencrest Road, Valley Township, Chester County.  Both victims had been shot[:]  Toledo, four times and Montgomery, once.   Montgomery later died at Brandywine Hospital.

The events which led to this bloody murder scene began November 29, 1987, when [Appellant] drove Gregory Ferguson [("Ferguson")], Toledo and Montgomery from New York City, New York, to Chester County to meet Jackson. Apparently, Montgomery had asked Ferguson for the ride, but he did not have a car. [Appellant], Ferguson's cousin, had a Buick Somerset and agreed to drive.  [Appellant] and Ferguson were paid $250.00 for driving Montgomery and Toledo to Chester County.  They arrived in Coatesville at approximately 8:00 p.m. at Trina Rooks' [("Rooks")] apartment on 102 Victoria Drive, Coatesville.  Jackson, Rooks' boyfriend, was alone at the apartment.  Rooks arrived later.

At some point thereafter, [Appellant], Ferguson, Montgomery, Toledo, Jackson and Rooks drove around Chester County and made several stops, eventually returning to 103 Glen Crest Avenue.  Jackson and Rooks then left to go to Rooks' mother's house for a sump pump to remove rain water from Jackson's basement.  They returned, installed the sump pump and left at approximately 11:30 to 12 midnight.  Toledo stated that she wanted to get up at 5:00 a.m. to return to New York City by 8:00 a.m. Later, at 1:30 a.m. (November 30) Montgomery telephoned his employer, Michael Strobert, in New York City and said he would not be at work on November 30, 1987.

According to Ferguson's testimony, Toledo and Montgomery took a rifle with them back to the bedroom, leaving another rifle with Ferguson and [Appellant] in the living room. [Appellant] and Ferguson sat around drinking beer and smoking cigarettes laced with cocaine.  After a while, [Appellant] insisted that he wanted to get his money from Montgomery now; he was concerned he would not get paid. [Appellant] also talked of robbing Montgomery and Toledo.

Together, [Appellant] and Ferguson went to the bedroom and Ferguson knocked on the door. Montgomery came to the door and Ferguson explained that [Appellant] thought he was "getting beat" and asked if they were going to be paid. Montgomery assured them they would be paid and turned back to walk into the bedroom. At that point, [Appellant] shot Montgomery who fell forward into Ferguson. Ferguson let him down to the ground.

Ferguson ran into the bedroom and Toledo picked up the telephone answering machine in one hand and the [rifle] in the other. When Ferguson grabbed the point of the gun, Toledo struck him in the head with the answering machine. Ferguson pushed her away and [Appellant] ran up and shot Toledo in the cheek while she was [lying] across the bed. During Ferguson's struggle with Toledo, they got tangled up in the telephone cord. After [Appellant] shot her in the cheek, Toledo pleaded for her life. [Appellant] picked up Toledo's rifle and shot Toledo in the head. Ferguson ran out of the door, leaving the telephone cord trailing behind him. [Appellant] followed him out carrying one of the rifles, Montgomery's coat and Toledo's pocketbook. [Appellant] threw the rifle in the trunk, jumped in the driver's seat and began driving.

On December 9, 1988, following a jury trial, [Appellant] was convicted of two counts of first-degree murder, two counts of criminal conspiracy, and one count of robbery. [Appellant] was subsequently sentenced to an aggregate sentence of life in prison. This Court affirmed the judgment of sentence [on May 17, 1993]. *See Commonwealth v. Bleau*, 631 A.2d 210 (Pa. Super. 1993) (unpublished memorandum).

[Appellant's] first PCRA Petition was denied, and this Court affirmed the denial. *See Commonwealth v. Bleau*, 785 A.2d 1024 (Pa. Super. 2001) (unpublished memorandum), *appeal denied*, 798 A.2d 1286 (Pa. 2002). [Appellant's] second PCRA Petition was dismissed, and this Court affirmed the dismissal. *See* [*Commonwealth v. Bleau*, 91 A.3d 1288 (Pa. Super. 2013) (unpublished memorandum) at 1-13].

*Commonwealth v. Bleau*, 151 A.3d 1156 (Pa. Super. 2016) (unpublished memorandum) at 1-3 (internal corrections, quotations and footnote omitted) (some internal citations omitted).

On March 23, 2015, Appellant filed his third PCRA petition. The PCRA court dismissed the petition and, on May 23, 2016, this Court affirmed the PCRA court's order. *Id.* at 1-11.

Appellant filed the current PCRA petition (his fourth) on March 13, 2017. As the PCRA court explained, Appellant alleged the following in his fourth petition:

> [within the petition, Appellant] contends that[,] approximately 30 years after his conviction, he [] recently discovered two police reports that were previously provided to his trial counsel during discovery which establish his innocence. [Appellant] further asserts that his cousin was in possession of these police reports and other legal material from [Appellant's] trial. [Appellant] claims that when his cousin died, sometime around November 27, 2016, [Appellant's] sister discovered the police reports in the cousin's apartment and made [Appellant] aware of the materials. [Appellant] asserts that the two police reports contain interviews of his friend, New York [g]rocery [s]tore owner Frank Fayz, which establish his alibi and innocence. . . . [Appellant] acknowledges in his PCRA petition that defense counsel was already in possession of the two police reports at the time of trial. . . . [Moreover, Appellant] has been acting *pro se* for the majority of the last 30 years. Through self-representation, [Appellant] [] had access to his entire [case] file[,] including the police reports and other discovery material.

PCRA Court Order, 5/4/17, at 6-7; **see also** Appellant's Fourth PCRA Petition, 3/13/17, at 3; Appellant's Amended Fourth PCRA Petition, 5/1/17, at 1-19.

- 4 -

On June 20, 2017, the PCRA court finally dismissed Appellant's petition and Appellant filed a timely notice of appeal. We now affirm the dismissal of Appellant's patently untimely, serial PCRA petition.

"As a general proposition, we review a denial of PCRA relief to determine whether the findings of the PCRA court are supported by the record and free of legal error." **Commonwealth v. Eichinger**, 108 A.3d 821, 830 (Pa. 2014).

Before this Court can address the substance of Appellant's claim, we must determine if this petition is timely.

> [The PCRA requires] a petitioner to file any PCRA petition within one year of the date the judgment of sentence becomes final. A judgment of sentence becomes final at the conclusion of direct review . . . or at the expiration of time for seeking review.
>
> . . .
>
> However, an untimely petition may be received when the petition alleges, and the petitioner proves, that any of the three limited exceptions to the time for filing the petition, set forth at 42 Pa.C.S.A. § 9545(b)(1)(i), (ii), and (iii), are met. A petition invoking one of these exceptions must be filed within [60] days of the date the claim could first have been presented. In order to be entitled to the exceptions to the PCRA's one-year filing deadline, the petitioner must plead and prove specific facts that demonstrate his claim was raised within the [60]-day timeframe.

**Commonwealth v. Lawson**, 90 A.3d 1, 4-5 (Pa. Super. 2014) (some internal citations omitted) (internal quotations omitted).

In the present case, the PCRA court found Appellant's petition to be untimely filed. We agree.

- 5 -

Appellant's judgment of sentence became final in 1993. *See* 42 Pa.C.S.A. § 9545(b)(3) ("A judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States . . . , or at the expiration of time for seeking the review"). The PCRA explicitly requires that a petition be filed "within one year of the date the judgment becomes final." 42 Pa.C.S.A. § 9545(b)(1). Since Appellant filed his current petition on March 13, 2017, the current petition is patently untimely and the burden thus fell upon Appellant to plead and prove that one of the enumerated exceptions to the one-year time-bar applied to his case. *See* 42 Pa.C.S.A. § 9545(b)(1); *Commonwealth v. Perrin*, 947 A.2d 1284, 1286 (Pa. Super. 2008) (to properly invoke a statutory exception to the one-year time-bar, the PCRA demands that the petitioner properly plead and prove all required elements of the relied-upon exception).

Appellant claims to invoke the "newly-discovered facts" exception to the time-bar. This statutory exception provides:

> (1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:
>
> . . .
>
> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence[]
>
> . . .

(2) Any petition invoking an exception provided in paragraph (1) shall be filed within 60 days of the date the claim could have been presented.

42 Pa.C.S.A. § 9545(b).

As our Supreme Court has explained:

subsection (b)(1)(ii) has two components, which must be alleged and proved.  Namely, the petitioner must establish that:  1) "the **facts** upon which the claim was predicated were **unknown**" and (2) "could not have been ascertained by the exercise of **due diligence**."  42 Pa.C.S. § 9545(b)(1)(ii)(emphasis added).  If the petitioner alleges and proves these two components, then the PCRA court has jurisdiction over the claim under this subsection.

***Commonwealth v. Bennett***, 930 A.2d 1264, 1272 (Pa. 2007) (emphasis in original).

Further, to properly invoke the newly-discovered facts exception, the petitioner is statutorily required to file his petition "within 60 days of the date the claim could have been presented."  42 Pa.C.S.A. § 9545(b).  As our Supreme Court has explained, to satisfy this "60-day requirement," a petitioner must "plead and prove that the information on which he relies could not have been obtained earlier, despite the exercise of due diligence." ***Commonwealth v. Stokes***, 959 A.2d 306, 310-311 (Pa. 2008); ***Commonwealth v. Breakiron***, 781 A.2d 94, 98 (Pa. 2001).  Moreover, because the "60-day requirement" of section 9545(b)(2) is a statutory mandate, the requirement is "strictly enforced." ***Commonwealth v. Monaco***, 996 A.2d 1076, 1080 (Pa. Super. 2010).

In the case at bar, Appellant claims that Frank Fayz's statements constitute newly-discovered facts and that Appellant first discovered the statements when his sister reviewed his case file, some 30 years after Appellant's convictions. **See** Appellant's Fourth PCRA Petition, 3/13/17, at 3. However, Appellant has not pleaded why he could not have discovered Frank Fayz's statements earlier, if he had exercised due diligence. To be sure, Appellant acknowledges that Mr. Fayz's statements were contained in two police reports and that those police reports were available to him in his case file. Therefore, we agree with the PCRA court that Appellant has not pleaded why, at some point in the past 30 years, he or his prior counsel could not have discovered the cited facts earlier with the exercise of due diligence. We conclude that Appellant failed to properly plead the newly-discovered fact exception to the PCRA's time-bar. **Commonwealth v. Monaco**, 996 A.2d 1076, 1080 (Pa. Super. 2010) ("[d]ue diligence demands that the petitioner take reasonable steps to protect his own interests. A petitioner must explain why he could not have obtained the new fact(s) earlier with the exercise of due diligence. This rule is strictly enforced").

Thus, our "courts are without jurisdiction to offer [Appellant] any form of relief." **Commonwealth v. Jackson**, 30 A.3d 516, 523 (Pa. Super. 2011). We affirm the PCRA court's order, which dismissed Appellant's fourth PCRA petition without a hearing.

Appellant's Application to Withdraw Motion for Leave of Court to Supplement Brief granted. Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/5/18