J-S15003-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                                  : PENNSYLVANIA
                                                  :
                          v.                      :
                                                  :
                                                  :
                                                  :
RAUL DELAROSA                                     :
                                                  :
                    Appellant                    : No. 2188 EDA 2023

Appeal from the PCRA Order Entered August 3, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0003855-2017

BEFORE: OLSON, J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY OLSON, J.:                          **FILED JUNE 28, 2024**

Appellant, Raul DeLarosa, appeals from the order entered on August 3,

2023, which denied his petition filed under the Post Conviction Relief Act

(PCRA), 42 Pa.C.S.A. §§ 9541-9546. We affirm.

On January 22, 2018, Appellant entered a negotiated guilty plea to

third-degree murder, criminal conspiracy, and criminal solicitation.[1] During

the plea colloquy, Appellant admitted to the following:

> [In] June [] 2010, [Appellant] requested the assistance of
> [co-defendant Hector Rivera] . . . to assist him in the killing
> of the victim in this case, Candido Hidalgo [("the Victim")].

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2502(c), 903, and 902(a), respectively.

Hector Rivera, in turn, asked another [co-defendant] in this case by the name of Jose Padilla . . . to also assist in the killing of [the Victim].

On . . . [June 13, 2010], with the assistance of [Appellant], Hector Rivera and Jose Padilla, armed with knives[,] waited in the back of [the Victim's Philadelphia] property. . . . Mr. Rivera and Mr. Padilla waited . . . between 3:00 a.m. and 4:00 a.m. on that date . . . [and] when the [Victim] . . . arrived home, they attacked him and stabbed him repeatedly with knives. And they stabbed him in the area of the face, the neck, the hands, and the chest.

Mr. Rivera and Mr. Padilla fled the location. Police and medics were called by [the Victim's] wife and daughter who were home at the time. Medics arrived and pronounced [the Victim] dead at 4:07 a.m.

[The Victim's] body was transported to the Medical Examiner's Office where his remains were examined by forensic pathologist Dr. Aaron Rosen, who determined that the cause of [the Victim's] death was multiple stab and incise wounds, and that the manner of death was homicide.

Subsequent to the killing of [the Victim, Appellant] did make arrangements to pay Mr. Rivera and Mr. Padilla thousands of dollars for their assistance in the killing of [the Victim. Appellant] fled to the Dominican Republic shortly after the murder and had to be extradited back here to be here for this trial.

. . .

[The] evidence would show that [Appellant and the Victim] were involved in a drug dealing business together. They were transporting large quantities of drugs from Mexico throughout the East Coast.

N.T. Guilty Plea, 1/22/18, at 20-22.

On February 20, 2018, the trial court sentenced Appellant to serve the negotiated, aggregate sentence of 15 to 30 years in prison for his convictions.

N.T. Sentencing, 2/20/18, at 19. We affirmed Appellant's judgment of sentence on January 31, 2019. *Commonwealth v. DeLarosa*, 209 A.3d 543 (Pa. Super. 2019) (non-precedential decision).

On March 26, 2019, Appellant filed a timely, *pro se* PCRA petition and the PCRA court later appointed counsel to represent Appellant during the proceedings. The PCRA court dismissed Appellant's first PCRA petition on August 12, 2019 and we affirmed the PCRA court's order on December 14, 2020. *Commonwealth v. DeLarosa*, 245 A.3d 1065 (Pa. Super. 2020) (non-precedential decision).

On May 1, 2023, Appellant filed the current PCRA petition, which constitutes Appellant's second petition for post-conviction collateral relief under the PCRA. Within the petition, Appellant claimed:

> On November 20, 2022, while at the prison library, the law clerk provided [Appellant] with a copy of a publication titled *Right To Be Free*, which documented an extensive list of Philadelphia Police Officers who had been "accused, charged, convicted, and/or disciplined for alleged actions of misconduct."
>
> With the assistance of the law clerk, the names of these police officers were compared to the few pages of the discovery file [Appellant] has in his possession. This search revealed the following officers accused or convicted of misconduct were also involved in the investigation of [Appellant's] case: "John Verrecchio, Ohmarr Jenkins, Thomas Gaul, Angela Gaines, Ronald Jenkins, Philip Nordo, Carl Watkins," and "Holmes."
>
> On February 12, 2023, [Appellant] received (from the prison's law clerk) what he believes to be portions of Officer Nordo's disciplinary file that the law clerk obtained from another prisoner. This information, which was never disclosed to defense counsel, reveals that Officer Nordo had

committed instances of police misconduct before [Appellant's] arrest, and was suspended or under investigation at the time of [Appellant's] guilty plea.

[Appellant] submits that[] Hector Rivera, the only witness linking him to this crime[,] was interviewed by [officers] Nordo, Verrecchio, and Gaul. At this interview, Rivera allegedly confessed to committing the murder ordered by [Appellant], and set in motion via a phone call.

In an August 5, 2014 sworn affidavit, based on this interview, Officer Verrecchio claimed to be in possession of phone records linking a call from [Appellant] to Rivera at the time of the murder. These phone records, however, cannot be located. While [Appellant] knew he did not call Rivera when he pled guilty, his attorney told him the police had records that demonstrate a call was made. Had [Appellant] known at the time of his guilty plea that Officer Verrecchio was dishonest, he would not have accepted his attorney's word that such phone records existed, and further, rejected the Commonwealth's offer to plead guilty.

Appellant's Second PCRA Petition, 5/1/23, at 1-3 (citations and numbering omitted).

According to Appellant, even though his PCRA petition was facially untimely, his claims fell within the newly-discovered fact and governmental interference exceptions to the PCRA's one-year time-bar. Appellant requested that the PCRA court "vacate his conviction, allow him to withdraw his guilty plea, and invoke his right to a jury trial." *Id.* at 3.

On May 17, 2023, the PCRA court provided Appellant with notice that it intended to dismiss his petition in 20 days, without holding a hearing, as the petition was untimely. PCRA Court Notice, 5/17/23, at 1; *see also* Pa.R.Crim.P. 907(1). Appellant responded to the PCRA court's Rule 907 notice with an amended petition that expounded upon his original claims. *See*

- 4 -

Appellant's Rule 907 Response, 7/10/23, at 1-29.  The PCRA court finally dismissed Appellant's second PCRA petition on August 3, 2023 and Appellant filed a timely notice of appeal.  *See* PCRA Court Order, 8/3/23, at 1.  Appellant raises the following claims on appeal:

> 1. Was Appellant entitled to a hearing on his claim that his PCRA filings below, within [one] year of his discovery of evidence revealing the homicide detectives in his case engaged in serious misconduct, satisfied the jurisdictional requirements of 42 Pa.C.S. § 9545(b)(1)(i) and (ii)?
>
> 2. Was Appellant entitled to a hearing on his **Brady**[2] claim where, after pleading guilty and petitioning to withdraw [his] plea, Appellant presented evidence suppressed by the Commonwealth, revealing that both the Commonwealth and trial court knew that the homicide detectives in his case were engaging in serious misconduct which if disclosed, would have resulted in Appellant's rejection of the Commonwealth's plea offer?
>
> 3. Was Appellant entitled to a hearing on his after-discovered evidence claim where, after pleading guilty, Appellant presented evidence – suppressed by the Commonwealth – after being alerted to and diligently searching for such evidence, revealing that all homicide detectives in his case, including the affiant himself, engaged in misconduct that included falsifying witness statements to support affidavits of probable cause?

Appellant's Brief at 3 (some capitalization omitted).

We have reviewed the briefs of the parties, the relevant law, the certified record, and the opinion of the able PCRA court judge, the Honorable Barbara A. McDermott.  We conclude that Appellant is not entitled to relief in this case,

---

[2] **Brady v. Maryland**, 373 U.S. 83 (1963).

- 5 -

for the reasons expressed in Judge McDermott's August 3, 2023 opinion. Therefore, we affirm on the basis of Judge McDermott's opinion and adopt it as our own. In any future filing with this or any other court addressing this ruling, the filing party shall attach a copy of Judge McDermott's August 3, 2023 opinion.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/28/2024

# IN THE COURT OF COMMON PLEAS
## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
## CRIMINAL TRIAL DIVISION

COMMONWEALTH OF PENNSYLVANIA     :     CP-51-CR-0003855-2017

                 :

v.                     : **FILED**

                 : AUG 0 3 2023

RAUL DELAROSA               : PCRA Unit
                          CP Criminal Listings

## ORDER AND OPINION

**McDermott, J.**                                         **August 3, 2023**

### Procedural History

On March 10, 2017, the Petitioner, Raul Delarosa, was arrested and charged with Murder and related offenses. On January 22, 2018, the Petitioner appeared before this Court and entered into a negotiated guilty plea to Third-Degree Murder, Conspiracy to Commit Murder, and Criminal Solicitation of Murder. At the Defendant's request, sentencing was deferred. On February 13, 2018, the Petitioner filed a Motion to Withdraw his Guilty Plea. Following a hearing on February 20, 2018, this Court denied his Motion. That same day, this Court imposed the negotiated penalties of fifteen to thirty years of imprisonment for Third-Degree Murder, and concurrent sentences of fifteen to thirty years of imprisonment for Conspiracy to Commit Murder and Criminal Solicitation of Murder, for a total sentence of fifteen to thirty years of imprisonment.[1]

---

[1] The remaining charges were *nolle prossed*

1

The Petitioner appealed, and on January 31, 2019, the Superior Court of Pennsylvania affirmed his judgment of sentence. The Petitioner did not file a Petition for Allowance of Appeal with the Supreme Court of Pennsylvania.

On March 26, 2019, the Petitioner filed a timely *pro se* Post-Conviction Relief Act ("PCRA") petition, his first. On May 20, 2019, court-appointed PCRA counsel filed a no-merit letter pursuant to *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988) (*en banc*). On May 30, 2019, after a *Grazier*[2] hearing, this Court permitted counsel to withdraw, allowed the Petitioner to proceed *pro se*, and determined that an evidentiary hearing was necessary.[3] After an evidentiary hearing on August 12, 2019, this Court dismissed the petition. After appellate counsel was appointed[4], the Petitioner appealed, and the Superior Court of Pennsylvania affirmed this Court's dismissal on December 14, 2020. The Petitioner did not file a Petition for Allowance of Appeal.

On May 1, 2023, the Petitioner filed the instant *pro se* PCRA petition, his second. On May 17, 2023, this Court issued a Notice of Intent to Dismiss pursuant to Pa.R.Crim.P. 907. On June 5, 2023, this Court granted the Petitioner's Motion for Extension of Time to File a 907 Response and directed him to file a Response no later than July 6, 2023. On July 10, 2023, the Petitioner filed an untimely 907 Response.

**Facts**

On January 22, 2018, the Petitioner admitted his guilt to the following facts:

> [I]n June of 2010, [the Petitioner], Raul Delarosa, also known as Javier Cepeda, also known as Edwin Pichardo, requested the assistance of a codefendant in this case, Hector Rivera, PID No.

---

[2] *Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1998).
[3] At the *Grazier* hearing, this Court noted that it had not yet received the *Finley* letter, but found that an evidentiary hearing was necessary to address Petitioner's allegations of plea counsel's ineffectiveness in connection with the entry of his guilty plea.
[4] At the conclusion of the evidentiary hearing, the Petitioner requested that counsel be appointed for his appeal.

2

974687. He asked Mr. Rivera to assist him in the killing of the [decedent] in this case, Candido Hidalgo.

Hector Rivera, in turn, asked another codefendant in this case by the name of Jose Padilla, PID No. 946658, to also assist in the killing of Mr. Candido Hidalgo.

On the date of... June 13th of 2010, with the assistance of [the Petitioner], Hector Rivera and Jose Padilla, armed with knives waited in the back of [the decedent]'s property, which is located at 6120 Cottage Street in Philadelphia. Mr. Rivera and Mr. Padilla waited at approximately between 3:00 a.m. and 4:00 a.m. on that date, June 13, 2010. And when the [decedent] arrived home, they attacked him and stabbed him repeatedly with knives. And they stabbed him in the area of the face, the neck, the hands, and the chest.

Mr. Rivera and Mr. Padilla fled the location. Police and medics were called by [the decedent]'s wife and daughter who were home at the time. Medics arrived and pronounced [the decedent] dead at 4:07 a.m.

[The decedent]'s body was transported to the Medical Examiner's Office where his remains were examined by forensic pathologist Dr. Aaron Rosen, who determined that the cause of [the decedent]'s death was multiple stab and incise wounds, and that the manner of death was homicide.

Subsequent to the killing of [the decedent], [the Petitioner] did make arrangements to pay Mr. Rivera and Mr. Padilla thousands of dollars for their assistance in the killing of Candido Hidalgo. [The Petitioner] fled to the Dominican Republic shortly after the murder and had to be extradited back here to be here for this trial.

. . .

[The Petitioner] and [the decedent] were involved in a drug dealing business together... transporting large quantities of drugs from Mexico throughout the East Coast.

N.T. 1/22/2018 at 20–21.

## Discussion

In his second PCRA petition, the Petitioner raises one claim for review, alleging that the

Commonwealth committed a *Brady*[5] violation by failing to disclose allegations of misconduct

---

[5] *Brady v. Maryland*, 373 U.S. 83 (1963).

3

against Detectives John Verrecchio, Phillip Nordo, Thomas Gaul, Ohmarr Jenkins, Angela Gaines, Ronald Jenkins, Carl Watkins, and Holmes[6] in other cases.

A PCRA petition, including a second or subsequent petition, must be filed within one year of the date that the judgment of sentence becomes final. 42 Pa.C.S. § 9545(b)(1). "[A] judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." *Commonwealth v. Nedab*, 195 A.3d 957, 960 (Pa. Super. 2018); 42 Pa.C.S. § 9545(b)(3). A final order of the Superior Court is any order that concludes an appeal, and a Petition for Allowance of Appeal with the Supreme Court of Pennsylvania must be filed within thirty days after the entry of the Superior Court Order. Pa.R.A.P. 1112; Pa.R.A.P. 1113.

The time requirement is mandatory and jurisdictional in nature, and a trial court cannot ignore it in order to reach a petition's merits. *Commonwealth v. Cox*, 146 A.3d 221, 227 (Pa. 2016) (*citing Commonwealth v. Jones*, 54 A.3d 14, 16 (Pa. 2012)). An untimely petition renders the court without jurisdiction to afford relief. *Commonwealth v. Spotz*, 171 A.3d 675, 678 (Pa. 2017).

The instant petition is facially untimely. The Pennsylvania Superior Court affirmed this Court's Judgment of Sentence on January 31, 2019. Therefore, the instant conviction became final on March 3, 2019, when the thirty-day period to seek a Petition for Allowance of Appeal with the Supreme Court of Pennsylvania expired. Petitioner had until March 3, 2020 to file a timely petition. The instant petition was filed on May 1, 2023, three years, one month, and twenty-eight days after the period to seek review expired.

---

[6] The Petitioner did not provide a first name for Detective Holmes.

4

A PCRA court has jurisdiction to review collateral claims filed beyond the one-year limit if a petitioner alleges and proves any of the three limited exceptions under 42 Pa.C.S. § 9545(b)(1)(i)–(iii):

> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
>
> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
>
> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1). A petition invoking one of the exceptions must be filed within one year of the date the claim could have first been presented, and a petitioner must plead and prove that he has met this requirement. *Commonwealth v. Peterson*, 192 A.3d 1123, 1125 (Pa. 2018); 42 Pa.C.S. § 9545(b)(2).

The Petitioner alleges that the instant claim falls under the newly-discovered fact and government interference exceptions to the PCRA timeliness requirement. To qualify for the newly-discovered fact exception, a petitioner needs to establish that the facts forming the basis of the claim were unknown to him and could not have been obtained by the exercise of due diligence. *Commonwealth v. Burton*, 158 A.3d 618, 629 (Pa. 2017). Due diligence requires that a petitioner take reasonable steps to protect his own interests. *See Commonwealth v. Sanchez*, 204 A.3d 524, 526 (Pa. Super. 2019) (petitioner failed to explain how the fact that a detective was found liable of malicious prosecution in a civil case could not have been ascertained sooner by

5

the exercise of due diligence). A petitioner must explain why he could not have obtained the new fact earlier with the exercise of due diligence to satisfy the newly-discovered fact exception. *Id.*

In the instant petition, Petitioner claims that, on November 20, 2022, a law clerk in the prison law library provided him with a copy of a list of Philadelphia Police Officers accused of misconduct entitled "Right To Be Free." Upon reviewing this list, he noticed that it included the above-named Detectives, whom he alleges were involved in his case. On February 12, 2023, Petitioner allegedly received portions of Detective Nordo's disciplinary file from the law clerk, who had obtained the documents from another inmate. In his 907 Response, Petitioner states that he received more information from the prison law clerk on June 10th and 20th, 2023 regarding additional allegations of misconduct by Detectives Nordo, Gaul, Jenkins, and Verrecchio which predate his guilty plea.[7]

The Petitioner claims that the allegations of misconduct against the Detectives in other, unrelated cases constitute newly-discovered facts as they were never disclosed to him by the Commonwealth and they were unknown to him until they were provided to him by the prison law clerk. In his 907 Response, Petitioner alleges that he acted diligently once he received information from the prison law clerk regarding these allegations. In support, he attached a letter he sent to the Philadelphia District Attorney's Office on January 12, 2023 requesting information related to misconduct or criminal acts committed by the Detectives. *See* Pet.'s Exhibit 5.

Petitioner also attached excerpts from an article entitled "The Homicide Files" that was originally published by the Philadelphia Inquirer on May 7, 2021. *See* Pet.'s Ex. 2. Newspaper articles about police misconduct in unrelated cases are insufficient to establish the newly-discovered fact exception. *See Commonwealth v. Reeves*, 2545 EDA 2022 (Pa. Super. June 9,

---

[7] Petitioner did not include any additional information regarding allegations of misconduct against Detectives Gaines, Ronald Jenkins, Watkins, or Holmes.

6

2023) (*citing Commonwealth v. Castro*, 93 A.3d 818 (Pa. 2014)). A newspaper article may contain allegations that suggest evidence may exist, "but allegations in the media, whether true or false, are no more evidence than allegations in any other out-of-court situation." *Id.* Therefore, newspaper articles referencing misconduct by the Detectives in unrelated cases do not constitute newly-discovered facts, and only contain information which could lead a petitioner to discover facts.

Petitioner's claims fail to satisfy the newly-discovered fact exception as he has not established that he exercised due diligence in discovering these allegations. Petitioner could have discovered the allegations against the Detectives earlier by making a reasonable effort to discover them. With regard to the alleged misconduct of Detective Nordo, Petitioner could have been obtained this information as early as August 2017, when there were multiple new reports of his misconduct and suspension. There were also articles published by the Philadelphia Inquirer between 2019 and 2021 for each of the cases where a conviction was vacated based on the misconduct of Detective Nordo.[8]

In his 907 Response, Petitioner acknowledges that the allegations of misconduct in each of the cases he cited were made prior to his guilty plea on January 22, 2018.[9] Petitioner has not offered any reasonable explanation as to why he could not have learned about these allegations earlier with the exercise of due diligence. *See Commonwealth v. Talbert*, 281 A.3d 1091 (Pa. Super. 2022) (non-precedential decision) (appellant's *Brady* claim regarding allegations of

---

[8] The Philadelphia Inquirer published articles regarding Jamaal Simmons' case on January 21, 2019, Sherman McCoy's case on February 22, 2019, Gerald Camp's case on February 28, 2019, James Frazier's case on April 19, 2019, and Arkel Gracia's case on June 4, 2021. The Philadelphia Inquirer also published articles regarding Reafeal Fields' case on December 19, 2022 even though his conviction has not been vacated, and regarding Rafiq Dixon's case on April 21, 2022 although his conviction was not vacated as a result of Detective Nordo's conduct, but only on the basis of ineffective assistance of counsel for failure to call an alibi witness.

[9] All the allegations of misconduct against the Detectives referenced by the Petitioner in his 907 Response were first raised between 2006 and 2017.

7

misconduct by Detectives Nordo, Gaul, and Verrecchio in unrelated cases untimely where appellant did not explain why he could not have learned those facts earlier by the exercise of due diligence when the unrelated cases preceded his petition by several years).

Petitioner failed to detail any efforts he made to discover these allegations prior to November 2022, which was over four years and nine months after he pled guilty. Instead of providing details about his efforts, Petitioner argues that he was unable to discover these allegations prior to November 2022 because he was limited by his incarceration and the fact that he primarily speaks Spanish.

Contrary to the Petitioner's assertion, Petitioner must still plead and prove that the facts could not have been obtained by the exercise of due diligence even though he is incarcerated and the public record presumption has been eliminated. Petitioner cannot merely claim that he was unable to take any action to discover these facts as a result of his incarceration. Petitioner was represented by counsel for much of his incarceration, specifically prior to his preliminary hearing, throughout his plea and sentencing, on direct appeal, and during his first PCRA petition and subsequent appeal, but still failed to take any action to discover these allegations.

While the Petitioner's primary language is Spanish, this does not absolve him of his burden to plead and prove that he exercised due diligence. Petitioner cites no cases in support which have found that a different standard applies for non-English speaking petitioners. The fact that the Petitioner primarily speaks Spanish did not hamper his ability to discover these allegations. The Petitioner was clearly capable of obtaining this information with the exercise of due diligence since he has, in fact, accessed this information and relied on it in submitting extensive pleadings to this Court.

8

Petitioner's language has not previously limited his ability to access information, submit pleadings, or represent himself in this case. Petitioner represented himself on direct appeal in Superior Court after his appellate counsel filed an *Anders*[10] Brief. He has filed two *pro se* PCRA petitions, and when this Court appointed counsel for his first PCRA petition, he objected and requested to proceed *pro se* with PCRA counsel appointed as stand-by counsel. After a *Grazier* hearing wherein this Court determined that an evidentiary hearing was necessary despite counsel's *Finley* letter, Petitioner was permitted to proceed *pro se*. This Court then conducted an evidentiary hearing where the Petitioner represented himself with an interpreter present. Based on the record and pleadings before this Court, Petitioner could have discovered the allegations with the exercise of due diligence despite speaking Spanish, but has not pled that he did, in fact, take any action whatsoever to discover these allegations.

Petitioner's *Brady* claim also fails to satisfy the government interference exception to the PCRA timeliness requirement. To qualify for the government interference exception, a petitioner needs to establish that his failure to previously raise the claim was the result of interference by government officials, and the information could not have been obtained by the exercise of due diligence. *See Commonwealth v. Williams*, 168 A.3d 97, 106 (Pa. 2017) (*citing Commonwealth v. Abu-Jamal*, 941 A.2d 1263, 1268 (Pa. 2008)).

Petitioner has failed to aver any facts which establish that his failure to previously raise this claim was the result of government interference or that he exercised due diligence, as discussed above. He did not provide any details about any attempts he made to obtain this information prior to November 2022 and he did not assert that he ever requested information from the Commonwealth related to allegations of misconduct by the above-named Detectives

---

[10] *See Anders v. California*, 386 U.S. 738 (1967); *see also Commonwealth v. McClendon*, 434 A.2d 1185 (Pa. 1981).

9

before it was provided to him by the prison law clerk. *See Talbert*, 281 A.3d 1091; *see also Commonwealth v. Holman*, 2490 EDA 2021, at *5 (Pa. Super. Oct. 6, 2022) (non-precedential decision) (bald assertions that due diligence could not have led to discovery of allegations of misconduct by Detectives James Pitts and Ronald Dove are insufficient to establish timeliness of *Brady* claim).

Contrary to the Petitioner's claims in his 907 Response, the due diligence requirement does apply to the government interference exception. There has never been a finding by any court that the due diligence requirement to establish a timeliness exception under the PCRA violates the U.S. Constitution or any related federal case law. The due diligence requirement for the government interference exception is imposed on petitioners through Section 9545(b)(2). *See Commonwealth v. Stokes*, 959 A.2d 306, 310 (Pa. 2008) (Section 9545(b)(2) "requires a petitioner to plead and prove that the information on which he relies could not have been obtained earlier, despite the exercise of due diligence"). The Superior Court has explained that, even assuming the failure to disclose information was a *Brady* violation, petitioners are not entitled to an indefinite period to raise the claim by invocation of the government interference exception. *Commonwealth v. Smith*, 194 A.3d 126, 133 (Pa. Super. 2018). The Pennsylvania Supreme Court has maintained that a petitioner must establish due diligence to satisfy the government interference exception to the PCRA time bar. *See Commonwealth v. Reid*, 235 A.3d 1124, 1144 (Pa. 2020); *see also Commonwealth v. Williams*, 168 A.3d 97, 106 (Pa. 2017).

While this Court lacks jurisdiction, for the benefit of any future proceedings, this Court will address the merits of Petitioner's claim. After reviewing the instant petition, this Court finds that, even if the instant petition was timely, his claim is without merit and does not entitle him to relief.

10

To succeed on a *Brady* claim, a defendant must establish that: (1) the evidence was suppressed by the prosecution, either willfully or inadvertently; (2) the evidence at issue was favorable to the accused, either because it is exculpatory or because it impeaches; and, (3) prejudice ensued. *Commonwealth v. Sandusky*, 203 A.3d 1033, 1061 (Pa. Super. 2019) (*citing Commonwealth v. Roney*, 79 A.3d 595, 607 (Pa. 2013)). A *Brady* violation arises where the suppressed evidence is material to guilt, i.e., where there is a reasonable probability that, had that evidence been disclosed, the outcome of the proceeding would have been different. *Commonwealth v. Cousar*, 154 A.3d 287, 301 (Pa. 2017). A reasonable probability of a different outcome is demonstrated when the government's suppression of evidence undermines confidence in the result of the trial. *Id.* (*citing United States v. Bagley*, 473 U.S. 667 (1985)).

The Petitioner's *Brady* claim fails as he cannot establish prejudice. Even assuming that the evidence was suppressed and favorable to him, Petitioner cannot demonstrate prejudice as, even if the Commonwealth had disclosed these allegations, there is not a reasonable probability that the result of the proceedings would have been different. Petitioner has failed to show that the above-named Detectives committed misconduct in his case and the allegations of misconduct in unrelated cases do not establish that his guilty plea was entered into involuntarily, unknowingly, or unintelligently. *Commonwealth v. Bryant*, 260 A.3d 176 (Pa. Super. 2021), appeal denied, 273 A.3d 509 (Pa. 2022) ("A petitioner can only assert a meritorious claim for PCRA relief by demonstrating a link between an officer's misconduct and the petitioner's own case.").

There is no evidence that the Detectives coerced the statements or testimony of his co-defendants, Hector Rivera and Jose Padilla, or his ex-wife, Fresa Pichardo. None of the witnesses has ever claimed that their statements to police were false or coerced, and Petitioner attached no certifications or affidavits from any of the witnesses in his case in which they recanted their

11

statements or alleged that police committed misconduct in obtaining their statements. At best, Petitioner's claims of coercion are merely speculative.

There is also no evidence that the Detectives lied about the existence of phone records, which showed a call from Petitioner to Rivera shortly before the murder. Petitioner's claim that these records do not exist is contradicted by the search warrant for the phone records from May 2012 and the affidavit of probable cause to arrest the Petitioner, which states that the information provided by a witness was corroborated by phone records. In his statement and testimony, Rivera confirmed that he received a call from Petitioner shortly before the murder. In the instant petition, Petitioner admits that his plea counsel told him that the police had records which established that there was a call made between Rivera and Petitioner around the time of the murder.

Even if these records do not exist, it is not likely that the result of the proceedings would have been different. Both of the Petitioner's co-defendants provided statements to the police which establish that Petitioner paid Rivera to murder the decedent. Petitioner's ex-wife also provided information which showed that Petitioner provided a large sum of money to Rivera in the days following the murder. Additionally, at his guilty plea and at sentencing, Petitioner admitted to speaking with Rivera to hire him to murder the decedent and clarified that the decision to kill the decedent was ultimately not his, but the criminal organization with which he was associated. Petitioner also apologized to the family of the decedent, who was present in the courtroom at his guilty plea. N.T. 1/22/2018 at 12, 20-21, 32-34; N.T. 2/20/2018 at 17-23.

Petitioner cannot show prejudice amounting to manifest injustice as he entered into his plea voluntarily, knowingly, or intelligently, as previously decided by this Court and Superior Court. *See* Trial Court Opinion, 4/5/18, at 3-6; *see also Commonwealth v. Delarosa*, 707 EDA

12

2018 (Pa. Super. Jan. 31, 2019). As a result, Petitioner is not entitled to relief and his *Brady* claim fails.

For the foregoing reasons, the instant petition is DENIED. The Petitioner is hereby notified that he has thirty (30) days from the date of this Order and Opinion to file an appeal with the Superior Court.

BY THE COURT,

_____
Barbara A. McDermott, J.

13

*Commonwealth v. Raul Delarosa,* CP-51-CR-0003855-2017

## PROOF OF SERVICE

I hereby certify that I am this day serving the foregoing filing upon the person(s), and in the manner indicated below, which service satisfies the requirements of Pa. R. Crim. P. 114:

Philadelphia District Attorney's Office
Three South Penn Square
Philadelphia, PA 19107
Attn: Tracey Kavanagh, Esq.

**Type of Service:**          **Regular Mail**

Raul Delarosa
NG7501
SCI Coal Township
1 Kelley Drive
Coal Township, PA 17866-1020

**Type of Service:**          **Certified Mail**

Dated: August 3, 2023

Sean McFadden
Law Clerk to the
Honorable Barbara A. McDermott

14