J-S19019-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
  :   PENNSYLVANIA
  :
v.   :
  :
  :
ALLEN R. DANIELY   :
  :
Appellant   :   No. 3175 EDA 2024

Appeal from the PCRA Order Entered October 31, 2024
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0001875-2008

BEFORE:  PANELLA, P.J.E., STABILE, J., and BECK, J.

MEMORANDUM BY STABILE, J.:        **FILED AUGUST 21, 2025**

Appellant, Allen R. Daniely, appeals from the order of the Court of Common Pleas of Philadelphia County dismissing as untimely his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-46. Upon review, we affirm.

The PCRA court summarized the facts of this case as follows:

On November 17, 2007, at approximately 8:30 p.m., Darryl Jones stopped by the home of his friend, Richard Murphy, on Wister Street in North Philadelphia. After being at the house for a few minutes, Mr. Jones stepped outside to take a call on his cell phone. He exited through Mr. Murphy's backyard, which faced the intersection of Rodeny Street and Homer Street. Shortly after Mr. Jones went outside, Mr. Murphy heard two gunshots and walked outside to investigate. He saw Mr. Jones lying in the middle of the street.

Philadelphia Police Officer John Erickson was patrolling nearby when he heard a gunshot. Officer Erickson drove around the block, looking for signs of gunfire, and then received a police radio transmission that a man was lying in the intersection of Rodney

and Homer Streets, approximately two blocks away. Officer Erickson arrived at the location and found Darryl Jones lying face down and suffering from a single gunshot wound to the back. Mr. Jones was transported to Einstein Medical Center, where he was pronounced dead. His cell phone was missing.

Two fired cartridge casings from a .40 caliber handgun were recovered from the scene of the murder. Police obtained Mr. Jones's cell phone records and began tracking the phone's signal, as it had been left on and was being used to place and receive calls. On November 20, 2007, with the assistance of the FBI, Philadelphia Police traced the cell phone's signal at a house at the intersection of Germantown Avenue and Washington Lane. After police saw [Appellant] exit the house with a cell phone in his hand, they stopped [Appellant] and patted him down. While patting him down, police found a .40 caliber handgun in a holster underneath his pants. After verifying that the cell phone belonged to the murder victim, police arrested [Appellant].

Once in custody, [Appellant] gave an inculpatory statement to police, in which he admitted playing a role in the robbery and murder of Mr. Jones. Detectives also interviewed two girlfriends of [Appellant], Ebony Sawyer and Phylicia Johnson. Both women told the police that they had seen [Appellant] with a gun in the timeframe surrounding the murder, and that [Appellant] had called them numerous times from Mr. Jones's phone. Ms. Sawyer also told police that [Appellant] told her he had committed the murder, demonstrating with his gun how he shot Mr. Jones in the back.

PCRA Court Opinion, 1/30/25, at 3-4. On July 23, 2009, following a non-jury trial, Appellant was found guilty of murder of the first degree, robbery, carrying a firearm without a license, and possessing an instrument of crime. He was sentenced to mandatory life imprisonment on the first-degree murder conviction, and an aggregate concurrent sentence of eight to 16 years on the remaining charges. No direct appeal was filed.

On December 21, 2009, Appellant filed a *pro se* PCRA petition and sought reinstatement of his direct appeal rights. His direct appeal rights were

reinstated on March 9, 2012. Appellant filed an appeal, and this Court affirmed the judgment of sentence. *See Commonwealth v. Daniely*, No. 1200 EDA 2012, 2013 WL 11259170, unpublished memorandum (Pa. Super. filed July 16, 2013).

Appellant filed a timely PCRA petition on July 7, 2014. PCRA counsel was appointed, and an amended petition was filed on March 23, 2022. Appellant asserted that trial counsel was ineffective because (1) he convinced Appellant to waive his right to a jury trial and (2) he failed to challenge the sufficiency of the evidence on direct appeal. In support of the second claim, Appellant attached an affidavit of a Commonwealth witness, Ebony Sawyer, in which she stated that police coerced her into providing a false statement implicating Appellant as the shooter in the underlying case. Following an evidentiary hearing, Appellant's petition was dismissed on October 11, 2022. This Court affirmed the dismissal. *See Commonwealth v. Daniely*, No. 2699 EDA 2022, 2023 WL 8761920, unpublished memorandum (Pa. Super. filed December 19, 2023).

Appellant filed the instant counseled petition on January 13, 2024, and an amended petition on March 8, 2024. Appellant asserted the newly discovered fact exception to the PCRA's timeliness requirement, namely "a newly identified unconstitutional pattern and practice of behavior on the part of [Philadelphia] homicide detectives[.]" PCRA Petition, 3/8/24, at 8. In support, Appellant relied upon the Sawyer affidavit, which was included in his first petition; the unpublished decision in *Commonwealth v. Williams*, No.

1264 EDA 2022, 2023 WL 3944892, unpublished memorandum (Pa. Super. filed June 12, 2023); and an expert report submitted by the petitioner in the *Williams* case.[1]  The Commonwealth responded that Appellant's petition was untimely, and that he failed to establish the newly discovered fact exception. Appellant's petition was dismissed as untimely on October 31, 2024.  This appeal follows.  Both the PCRA court and Appellant have complied with Pa.R.A.P. 1925.

Appellant raises a sole issue for our review:

Did the PCRA court err in finding, without a hearing, that Appellant's PCRA petition alleging that his constitutional rights under the Fifth and Fourteenth Amendments of the U.S. and PA Constitutions were violated by [Philadelphia] homicide detectives' use of an unconstitutional interrogation pattern and practice was untimely and lacked merit?

Appellant's Brief, at 6.

We review an order denying a petition for collateral relief to determine whether the PCRA court's decision is supported by the evidence of record and free of legal error.  *See e.g., Commonwealth v. Albrecht*, 994 A.2d 1091,

_____

[1] Williams filed an untimely PCRA petition and, citing *Commonwealth v. Thorpe*, No. CP-51-CR-11433-2008 (Phila. Cty. filed Nov. 3, 2017), asserted misconduct by Philadelphia homicide detectives as a newly discovered fact. There, Detective Pitts interviewed two Commonwealth witnesses, and both alleged they were coerced by him into providing statements. This Court remanded to the PCRA court for a hearing in the case to determine "the factual basis for the allegations of unconstitutional interrogations, when Appellant learned of them, and Appellant's due diligence in ascertaining the factual basis for the allegations[.]"  *Williams*, 2023 WL 3944892 at *4.  We noted, however, that the question of whether the evidence is admissible, and if so, relevant, is up to the PCRA court.  *Id.* at n.9.

- 4 -

1093 (Pa. 2010). "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." *Commonwealth v. Hernandez*, 79 A.3d 649, 651 (Pa. Super. 2013). "The scope of our review is limited to the findings of the PCRA court and the evidence of record, which we view in the light most favorable to the party who prevailed before that court." *Commonwealth v. Small*, 238 A.3d 1267, 1280 (Pa. 2020) (internal citations omitted).

All PCRA petitions, "including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final" unless an exception to timeliness applies.[2] 42 Pa.C.S.A. § 9545(b)(1). "The PCRA's time restrictions are jurisdictional in nature. Thus, [i]f a PCRA petition is untimely, neither this Court nor the trial court has jurisdiction over the petition. Without jurisdiction, we simply do not have the legal authority to address the substantive claim." *Commonwealth v. Chester*, 895 A.2d 520, 522 (Pa. 2006) (internal citations and quotation marks omitted) (overruled on other grounds by *Small*, *supra*). Timeliness is separate and distinct from the merits of the underlying claim; therefore, we must determine whether Appellant's petition was timely before we are permitted to address the merits of the substantive claims. *Commonwealth v. Stokes*, 959 A.2d 306, 310 (Pa. 2008).

---

[2] For an exception to apply, a petitioner must (1) plead and prove one of the exceptions set forth in Section 9545(b)(1)(i)-(iii); and (2) file a petition raising the exception within one year from the date on which the claim could have been presented. 42 Pa.C.S.A. § 9545(b)(2).

The instant petition is untimely on its face. Appellant's judgment of sentence was affirmed by this Court on July 16, 2013; therefore, it became final on August 15, 2013, upon expiration of the 30-day period to seek review with the Supreme Court of Pennsylvania. Consequently, Appellant had one year – until August 15, 2014 – to file a timely PCRA petition. The instant petition was filed on January 13, 2024, more than nine years after the judgment of sentence became final.

Appellant claims his petition is timely under the newly discovered fact exception, which requires proof that "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence." 42 Pa.C.S.A. § 9545(b)(1)(ii). Important for present purposes is this Court's well-settled interpretation of Section 9545(b)(1)(ii) as mandating that "the 'fact' on which the petitioner predicates his claim to an exception to the time-bar must bear some logical connection to a plausible claim for relief." *Commonwealth v. Myers*, 303 A.3d 118, 122 (Pa. Super. 2023).

According to Appellant, the "new fact" he has discovered is that homicide detectives in Philadelphia utilized an "unconstitutional pattern and practice" of interviewing and interrogating witnesses and suspects. Appellant's Brief, at 16. Appellant claims that the unconstitutional practices utilized by detectives included targeting vulnerable or weak individuals; isolating witnesses and suspects for lengthy periods of time; using threats, as well as verbal and physical abuse; and manipulating, fabricating, and/or

destroying evidence. *See id.* at 16-17. He contends that this alleged practice renders his claim more credible, which he raised in his prior PCRA petition as part of a sufficiency challenge, that Commonwealth witness Ebony Sawyer's statement to police was coerced and should not have been considered by the trier of fact in the underlying criminal matter. *See id.* at 19-20.

Appellant explains that "this unconstitutional interrogation pattern and practice was identified for the very first time by the Honorable Teresa Sarmina in *Commonwealth v. Thorpe*, [No. CP-51-CR-11433-2008 (Phila. Cty. filed Nov. 3, 2017)]." *Id.* at 18. Appellant recognizes that the *Thorpe* decision specifically relates to the actions of former Philadelphia homicide detective, James Pitts. Additionally, Appellant relies upon the unpublished *Williams* decision, wherein this Court remanded to the PCRA court for a hearing to determine "the factual basis for the allegations of unconstitutional interrogations, when Appellant learned of them, and Appellant's due diligence in ascertaining the factual basis for the allegations[.]" *Williams*, 2023 WL 3944892 at *4. We noted, however, that the question of whether the evidence is admissible, and if so, relevant, is up to the PCRA court. *Id.* at n.9.

Appellant argues that the *Thorpe* and *Williams* cases, and other unrelated criminal cases which he cites in his brief, establish that Philadelphia homicide detectives, including "Det[ectives] Bass, Buckley, Byard, Boyle, and Lucke regularly [participated in the misconduct] in order to falsely inculpate a pre-ordained suspect." Appellant's Brief, at 20. Regarding misconduct in his case, Appellant generally claims that Detectives Tracy Byard and Thorsten

Lucke utilized unconstitutional interrogation tactics to coerce Sawyer's statement. *See id.* at 23-30.

A petition raising an exception to the time bar must be filed within one year from the date on which the claim could have first been presented. 42 Pa.C.S.A. § 9545(b)(2). Appellant does not provide a specific date when he first learned of either the *Thorpe* and/or *Williams* decisions. He generally asserts that he was "completely unaware of the existence of the unconstitutional interrogation pattern and practice itself until he retained present counsel[, but was] not able to assert this claim until the [appeal of his first PCRA petition] was complete." Appellant's Brief, at 19.

Appellant stated that he only learned of the new fact when he retained present counsel. While there is no entry of appearance of record, counsel first filed a pleading on Appellant's behalf on November 6, 2021; therefore, we can assume that Appellant retained counsel close in time to that date. Sawyer's affidavit, wherein she explained that her statement was coerced by police, was dated March 15, 2022, and the instant petition was filed January 13, 2024, almost two years after the affidavit was signed. Based on our review of the record, and Appellant's assertion of when he learned of the newly discovered "fact," Appellant failed to raise the claim within one year from the date it could have been presented.

Even if Appellant's claim was timely, his petition failed to establish a new fact. In the context of the present appeal, Appellant alleges that *Thorpe* and *Williams* confirm the trial testimony of Sawyer that she was coerced into

providing a statement to police. However, Appellant failed to establish the fact of coercion because Sawyer freely testified at trial, and her testimony was materially consistent with her affidavit alleging coercion. Even if there was coercion, Appellant was already aware, or should have been aware, of the circumstances in which Sawyer's statement was given.

Sawyer is the mother of Appellant's child and was interviewed by Detectives Lucke and Byard. During the interview, Sawyer made the following statements, pertinent to this appeal: (1) Appellant called her multiple times from the victim's cell phone after the murder; (2) Appellant told her he was going to do a "job" on Saturday (the day of the murder); and (3) that Sawyer understood Appellant doing a "job" to mean that he was going to rob someone. Additionally, she told police Appellant admitted to the shooting:

> [Appellant] then pointed a gun at me I told him he didn't have the guts to shoot me and he said ask my goonies they know, because I have a lot of stuff under my belt (meaning a lot of jobs he did). He said I should have been there on Saturday, Jerone walked up to the guy and said something to the guy to make him stop. **[Appellant] was playing with the gun and was showing me how he shot the gun on Saturday** (demonstrating that he shot the gun three times) and he said that "**I** tore his back out the frame."

N.T. Trial, 7/20/09, Exhibit C-8 at 3 (Statement of Ebony Sawyer) (emphases added).

During Appellant's trial, Sawyer testified that Appellant called her from the victim's cell phone after the murder numerous times, that she knew Appellant to carry a handgun, and that Appellant told her "**somebody** got

their back blown out the frame[.]" N.T. Trial, 7/20/09, at 135 (emphasis added). Sawyer did not know what Appellant meant by that statement, was unsure when the alleged "job" occurred, and adamantly denied that she told police Appellant admitted to shooting the victim.[3] *Id.* at 136-37, 160-61. She also testified that her statement was given under duress – "They kept questioning me and I kept making a statement. They kept telling me if my statement doesn't stick, I wasn't going home. At that time, I wanted to be released to see my son and I asked for a phone call a couple times and they wouldn't give me a phone call." *Id.* at 147.

A review of Sawyer's 2022 affidavit reveals that the information she provided in it is consistent with her trial testimony. For example, in her affidavit she said that she never told detectives that Appellant admitted to shooting the victim and reiterated that police did not allow her to make a phone call. *See* PCRA petition, 3/8/24, Exhibit P4. In fact, she said the same thing during her trial testimony. N.T. Trial, 7/20/09, at 160-61, 163.

The record demonstrates clearly that the facts that serve as the basis of Appellant's coercion claim arose from Sawyer's interactions with Detectives Byard and Lucke and were readily available to Appellant at the time of his trial. In view of Sawyer's trial testimony that her statement that Appellant admitted to shooting the victim was the product of coercion, nothing

_____

[3] Sawyer testified – "I remember telling the detectives that [Appellant] was playing with the gun as in the gun went off three times. [Appellant] never said that he shot the man himself." N.T. Trial, 7/20/09, at 163.

- 10 -

prevented Appellant from investigating and raising his coercion claim before the trial court, on direct appeal, or within his prior timely PCRA petition. Even assuming Appellant did not know about the alleged pattern of unconstitutional interviewing tactics of the Philadelphia homicide unit, he knew of Detectives Byard and Lucke's alleged conduct in this case.

Moreover, unlike **Williams**, Detective Pitts did not interview Sawyer. Williams filed an untimely PCRA petition and, citing **Thorpe**, asserted misconduct by Philadelphia homicide detectives as a newly discovered fact. There, Detective Pitts interviewed two Commonwealth witnesses, and both alleged they were coerced by him into providing statements. While Detective Pitts did interrogate Appellant in this case, he does not assert any misconduct during his own interview. Instead, he claims Sawyer's statement was coerced by Detectives Byard and Lucke. Any evidence of misconduct of Detective Pitts in **Thorpe** and **Williams** is not evidence of misconduct *in this case*.

Accordingly, Appellant failed to establish the newly discovered fact exception because he did not raise a new fact, and even if he did, it was untimely. No relief is due.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/21/2025

- 11 -