J-A15045-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRIAN CHARLES | : | |
| | : | |
| Appellant | : | No. 1209 MDA 2023 |

Appeal from the PCRA Order Entered August 4, 2023
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0003727-1994

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRIAN CHARLES | : | |
| | : | |
| Appellant | : | No. 1210 MDA 2023 |

Appeal from the PCRA Order Entered August 4, 2023
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0003728-1994

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRIAN CHARLES | : | |
| | : | |
| Appellant | : | No. 1211 MDA 2023 |

Appeal from the PCRA Order Entered August 4, 2023
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0003729-1994

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |

|  | : |  |
| --- | --- | --- |
| v. | : |  |
|  | : |  |
|  | : |  |
| BRIAN CHARLES | : |  |
|  | : |  |
| Appellant | : | No. 1212 MDA 2023 |

Appeal from the PCRA Order Entered August 4, 2023
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0000456-1995

BEFORE: DUBOW, J., BECK, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.: **FILED: AUGUST 16, 2024**

Appellant Brian Charles appeals from the order of the Court of Common Pleas of Dauphin County denying his petition pursuant to the Post Conviction Relief Act (PCRA).[1] We affirm the dismissal of this untimely petition.

Appellant was arrested and charged in 1994 with criminal homicide, conspiracy, robbery, and related charges in connection with a crime spree in which several individuals committed multiple armed robberies on the same evening and fatally shot Michael Middleton. One of Appellant's co-defendants, Shabon Tucker, entered a guilty plea in connection with his role and agreed to testify against Appellant at his trial. This Court previously summarized the procedural history of this case as follows:

> On April 13, 1995, following a jury trial, [A]ppellant was found guilty of first degree murder, two counts of robbery, one count of robbery of a motor vehicle, one count of possession of prohibited offensive weapons, and four counts of criminal conspiracy. On May 19, 1995, [A]ppellant was sentenced to life imprisonment

---

[*] Former Justice specially assigned to the Superior Court.
[1] 42 Pa.C.S.A. §§ 9541-9546.

- 2 -

followed by a consecutive term of five to ten years' imprisonment. After a timely appeal was filed, this [C]ourt vacated [A]ppellant's judgment of sentence on May 8, 1996, and remanded the case for an evidentiary hearing on [A]ppellant's ineffectiveness claims. Evidentiary hearings took place on June 28, 1996. The trial court held that [A]ppellant's ineffectiveness claims were without merit and reinstated the judgment of sentence on September 19, 1996. On March 5, 1998, still on direct appeal, this [Court] affirmed the trial court's decision denying [A]ppellant relief. Our [S]upreme [C]ourt denied allocatur on August 12, 1998. Appellant did not seek review with the United States Supreme Court.

*Commonwealth v. Charles*, 33 MDA 2017, at *2 (Pa.Super. filed December 6, 2017 (unpublished memorandum)).

Thereafter, Appellant sought collateral review by filing two PCRA petitions which were denied and have no bearing on this appeal. On March 8, 2023, Appellant filed the instant *pro se* PCRA petition in which he claimed the Commonwealth committed a due process violation pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) by failing to disclose an understanding it had with Shabon Tucker, Appellant's co-defendant, that he would receive leniency from the prosecution in exchange for his testimony against Appellant.

Appellant conceded that his petition was facially untimely but claimed he met both the governmental interference and newly discovered fact exceptions to the PCRA's time limitations. Specifically, Appellant asserted had been searching for Tucker's criminal docket sheet for over two decades but it was not until March 4, 2022, that Appellant received information from a family friend that government officials had docketed Tucker's sentencing file under another name, "Shavon Tucker." Appellant argued that the "alteration of the

- 3 -

docket served to constructively impede any ability for [Appellant] to know of any deals, implications, or understandings of leniency between Tucker and the prosecutor in exchange for his cooperation and testimony against [Appellant]." Petition, 3/8/23, at 2.

As such, Appellant indicated he only recently secured Tucker's September 15, 1995 sentencing transcript which Appellant alleged contained evidence supporting his claim that Tucker had received a "hugely mitigated sentence" in exchange for his testimony and this understanding had not been disclosed by the prosecution in violation of *Brady*. Petition, at 17. While Appellant cited to Tucker's sentencing transcript, Appellant did not attach the transcript to the petition despite claiming that he had done so.

On April 5, 2023, the Commonwealth filed a response arguing that Appellant's petition was patently untimely. While the Commonwealth admitted Tucker was charged for the shared offenses under the alias of "Shavon Tucker," it claimed it was not responsible for creating Tucker's alias, but it was Tucker who created the rendition of his name. The Commonwealth argued that Tucker's docket sheets have been accessible to the public and Appellant has failed to show due diligence in searching using Tucker's alias.

In addition, the Commonwealth asserted that there was no *Brady* violation as the prosecution disclosed all relevant information to the defense. In his testimony at Appellant's trial, Tucker asserted that he had entered an open guilty plea to robbery and two counts of conspiracy to commit robbery with Appellant and two other co-defendants. Commonwealth Response,

- 4 -

4/5/23, at 11 (citing Notes of Testimony (N.T.), Trial, 4/10/95 - 4/13/95, at 190-92). The Commonwealth pointed out that Tucker indicated at Appellant's trial that his cooperation with the prosecution was going to be made known to the trial court at sentencing on his charges. Commonwealth Response, at 12 (citing N.T., Trial, at 190-92). Further, the Commonwealth argued that Appellant did not support its allegation that Tucker received undisclosed leniency as he failed to attach Tucker's sentencing transcript to his petition as required by Pa.R.Crim.P. 902.

On June 14, 2023, the PCRA court filed an order and opinion in which it gave notice of its intent to dismiss the petition without a hearing pursuant to Pa.R.Crim.P. 907. On July 5, 2023, Appellant filed a *pro se* objection to the PCRA court's Rule 907 notice.

On August 4, 2023, the PCRA court entered an order formally dismissing the petition, finding that Appellant had failed to establish one of the PCRA timeliness exceptions. The PCRA court found that a public docket search reveals numerous criminal dockets under both Shabon and Shavon Tucker and links the names as aliases. Since the criminal docket sheets were available since Tucker's sentencing in 1994, the PCRA court found Appellant failed to show that the facts of his underlying claim could not have been ascertained by due diligence within the timeliness restrictions of the PCRA. Further, the PCRA court rejected any suggestion that governmental officials impeded Appellant's efforts to find Tucker's docket sheets as it was Tucker himself who created the alias. This timely appeal followed.

As a preliminary matter, it is well-established that "the PCRA's timeliness requirements are jurisdictional in nature and must be strictly construed; courts may not address the merits of the issues raised in a petition if it is not timely filed." **Commonwealth v. Walters**, 135 A.3d 589, 591 (Pa.Super. 2016) (citations omitted). Generally, a PCRA petition "including a second or subsequent petition, shall be filed within one year of the date the judgment of sentence becomes final." 42 Pa.C.S.A. § 9545(b)(1). A judgment of sentence becomes final at the conclusion of direct review or the expiration of the time for seeking the review. 42 Pa.C.S.A. § 9545(b)(3).

However, Pennsylvania courts may consider an untimely PCRA petition if the petitioner explicitly pleads and proves one of the three exceptions enumerated in Section 9545(b)(1), which are as follows:

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S.A. § 9545(b)(1)(i)-(iii). Additionally, the PCRA currently requires that "[a]ny petition invoking an exception ... shall be filed within one year of the date the claim could have been presented." 42 Pa.C.S.A. § 9545(b)(2). "The PCRA petitioner bears the burden of proving the applicability of one of

the exceptions." ***Commonwealth v. Spotz***, 641 Pa. 717, 723, 171 A.3d 675, 678 (2017).

As noted above, Appellant was sentenced on May 19, 1995, this Court affirmed the judgment of sentence on March 5, 1998, and the Supreme Court denied Appellant's petition for allowance of appeal on August 12, 1998. As Appellant did not file a petition for a writ of certiorari with the Supreme Court of the United States, his judgment of sentence became final on November 12, 1998, upon the expiration of the ninety-day period to seek certiorari review. Appellant filed the instant petition in March 2023, over twenty-four years after his judgment of sentence became final.

As noted above, Appellant attempted to invoke the governmental interference and newly-discovered fact exceptions to the PCRA time bar, asserting that the Commonwealth interfered with his ability to raise his ***Brady*** claim sooner by failing to disclose that it had an understanding with Tucker that he would receive leniency in exchange for testifying against Appellant. In addition, Appellant faults the Commonwealth for failing to correct Tucker's "lie" when he testified at Appellant's trial that the prosecution had made no promises to him to induce him to serve as a witness against Appellant. Appellant asserts that Tucker's transcripts show that the prosecution did indeed extend Tucker leniency and contends that he was prevented from finding the transcripts as Tucker's criminal case was docketed under his alias.

We begin by noting that our courts have held that "[i]t is well-settled a ***Brady*** violation may fall within the governmental interference exception."

- 7 -

*Commonwealth v. Natividad*, 650 Pa. 328, 356, 200 A.3d 11, 28 (2019) (quoting *Commonwealth v. Breakiron*, 566 Pa. 323, 781 A.2d 94, 98 (2001)). However, our Supreme Court has held that "[a]lthough a *Brady* violation *may* fall within the governmental interference exception, the petitioner must plead and prove that the failure to previously raise the claim was the result of interference by governmental officials and that the information could not have been obtained earlier with the exercise of due diligence." *Commonwealth v. Abu-Jamal*, 596 Pa. 219, 227, 941 A.2d 1263, 1268 (2008) (citing *Breakiron*, 566 Pa. at 330-31, 781 A.2d at 98). *See also Commonwealth v. Stokes*, 598 Pa. 574, 582–83, 959 A.2d 306, 311–12 (2008) (same).

To satisfy the newly-discovered fact exception to the PCRA time bar, a petitioner must show that "he did not know the facts upon which he based his petition and could not have learned those facts earlier by the exercise of due diligence." *Commonwealth v. Balestier-Marrero*, 314 A.3d 549, 554 (Pa.Super. 2024) (quoting *Commonwealth v. Brown*, 111 A.3d 171, 176 (Pa.Super. 2015)). "Due diligence demands that the petitioner take reasonable steps to protect his own interests. A petitioner must explain why he could not have learned of the new fact(s) earlier with the exercise of due diligence." *Commonwealth v. Myers*, 303 A.3d 118, 121–22 (Pa.Super. 2023) (quoting *Commonwealth v. Williams*, 35 A.3d 44, 53 (Pa. Super. 2011)).

We begin by noting that although Appellant's claim is largely based on his contention that Tucker's sentencing transcript shows that Tucker received undisclosed leniency in exchange for his testimony against Appellant, Appellant failed to attach the transcript to his petition, which is not a part of the record before us. Our rules of criminal procedure require that in a PCRA petition, "[t]he defendant shall attach to the petition any affidavits, records, documents, or other evidence which show the facts stated in support of the grounds for relief, or the petition shall state why they are not attached." Pa.R.Crim.P. 902(D).

However, while Appellant failed to attach the relevant transcript in violation of Rule 902, the PCRA court did not provide any indication in its Rule 907 notice that it intended to dismiss Appellant's petition without a hearing based his failure to provide documents in support of his allegations. This notice would have given Appellant the opportunity to supplement his *pro se* petition with the missing transcript.

Even if we overlook this deficiency, we still affirm the order of dismissal due to Appellant's failure to plead or prove due diligence in pursuing collateral relief. We agree with the PCRA court's finding that Appellant failed to show that he could not have uncovered Tucker's sentencing transcript sooner with the exercise of due diligence. Appellant cannot claim he was diligent in his twenty-eight year search to uncover Tucker's September 15, 1995 sentencing transcript when Tucker's docket sheets were publicly accessible. While Appellant claimed that he was prevented from finding Shabon Tucker's docket

sheets as the relevant charges were docketed under his alias of Shavon Tucker, the PCRA court emphasized that "Mr. Tucker's criminal history is [listed] under both names when a public search is completed under his aliases and birth date." Rule 907 notice, 6/14/23, at 6.

We are not persuaded by Appellant's reliance on our Supreme Court's decision in **Commonwealth v. Small**, 662 Pa. 309, 238 A.3d 1267 (2020), which held that there is no longer a "public record presumption" pursuant to which a court had been permitted to find that information available to the public is not a fact that was previously "unknown" to the petitioner. Nevertheless, the **Small** Court clarified that the fact "that [Appellant] is relieved of the public record presumption does not mean that [Appellant] prevails.... The textual requirements of the time-bar exception remain." **Id.** at 340, 238 A.3d at 1286. Therefore, "although **Small** eliminates the public record presumption, it does not abrogate the requirement that petitioners perform due diligence to discover the facts upon which their claim is predicated." **Myers**, 303 A.3d at 123 (quoting **Commonwealth v. Keener**, No. 1165 WDA 2021, 2022 WL 2359373, at *4 (Pa.Super. June 30, 2022) (unpublished memorandum)).[2]

Although Appellant admits that he was aware that Tucker was sentenced on September 15, 1995, Appellant failed to explain to the PCRA court or appeal what efforts he took in the nearly twenty-eight year time period between

---

[2] We may cite to unpublished memorandum decisions of this Court filed after May 1, 2019, for their persuasive value. *See* Pa.R.A.P. 126(b).

Tucker's sentencing and the filing of the instant petition in 2023 to determine what sentence his co-defendant received. While Appellant contends that he was "searching" to uncover the results of Tucker's sentencing for over two decades, this bald allegation does not establish due diligence. We are unpersuaded that the docketing of Tucker's charges under his alias excused Appellant from decades of inaction when Tucker's charges were listed under both his name and his alias.

We similarly reject that Appellant's suggestion that that he was not required to exercise any due diligence in bringing his *Brady* claim in the instant petition as he alleges that the prosecution essentially "lied" when it failed to correct Tucker's claim at Appellant's trial that he had not received any promises from the Commonwealth in exchange for his testimony.

Appellant cites the Supreme Court's decision in ***Commonwealth v. Bagnall***, 661 Pa. 123, 235 A.3d 1075 (2020) to support his argument that Appellant was not required to "even attempt to look for never-disclosed *Brady* material hidden in a separately charged co-defendant's sentencing transcript … where the Commonwealth elicited testimony that no such impeachment information existed." Appellant's Brief, at 18.

In ***Bagnall***, the appellant raised a *Brady* claim on direct appeal alleging that the Commonwealth failed to disclose to the defense that one of the prosecution witnesses received consideration in exchange for his testimony. The Office of the Attorney General (OAG), which had assumed Bagnall's prosecution after the district attorney's office was deemed to have a conflict,

claimed to have no knowledge of a previous cooperation agreement between the witness and the district attorney's office. On appeal, the Supreme Court determined that the OAG was imputed with knowledge of the cooperation agreement of a key witness in Bagnall's trial with the district attorney's office. *Id.* at 149, 235 A.3d at 1090.

In addition, the Supreme Court also found that the lower courts erred in rejecting Bagnall's *Brady* claim on the basis of their finding that Bagnall did not exercise due diligence in seeking to obtain a transcript of the witness's guilty plea proceedings, which occurred before Bagnall's trial. *Id.* at 150, 235 A.3d at 1091. The Supreme Court noted that Bagnall repeatedly requested information as to whether the witness had received consideration in exchange for his cooperation and had been met with repeated denials by the prosecution. *Id.* at 150, 235 A.3d at 1091. The Supreme Court observed that Bagnall sought transcription of the witness's plea proceedings which vaguely noted that the witness received leniency in light of his "cooperation." *Id.* at 150-51, 235 A.3d at 1091. Given this ambiguity, Bagnall subpoenaed the testimony of the witness's defense counsel, who clarified that the witness had in fact received a mitigated sentence in exchange for his cooperation in the Bagnall's case. Based on these facts, the Supreme Court determined that Bagnall's efforts "were more than reasonable" in seeking to uncover the existence of the agreement between the witness and the prosecution.

In this case, Appellant emphasizes the Supreme Court's statement in *Bagnall* which provided that "[d]ue diligence does not require [the appellant]

to assume that the prosecution and [its witness] were untruthful." *Id.* at 151, 235 A.3d at 1092. However, the Supreme Court did not determine that an appellant is relieved of his duty to exercise due diligence in uncovering evidence to support a ***Brady*** claim, but instead highlighted that "whether due diligence has been exercised is a fact-specific inquiry determined on a case-by-case basis; it does not require perfect vigilance and punctilious care, but merely a showing that the party *has put forth a reasonable effort to obtain the information* upon which a claim is based." *Id.* at 151, 235 A.3d at 1091 (brackets and citation omitted, emphasis added).

While the PCRA court in this case did not assess the merits of whether there actually was an undisclosed agreement between Tucker and the prosecution in exchange for his testimony against Appellant, we agree that Appellant has failed to show that he put forth a reasonable effort to obtain evidence of the alleged agreement between Tucker and the prosecution. While Tucker testified at Appellant's trial that he had hoped to receive leniency for his testimony against Appellant, Appellant failed to explain what efforts he made in the twenty-four years between Tucker's 1995 sentencing and the filing of this petition to determine the outcome of Tucker's 1995 sentencing hearing. We cannot find the docketing of Tucker's charges under his alias excused Appellant from his due diligence requirement when the relevant charges noted both Tucker's name and alias.

As Appellant has not satisfied either of his claimed exceptions to the PCRA's timeliness requirement, we affirm the PCRA court's order dismissing his petition.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/16/2024